The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Dudley STEPHENSON, Defendant–
Appellant.

No. 99CA0484.

Colorado Court of Appeals,
Div. I.

Nov. 23, 2001.

Rehearing Denied March 14, 2002.

Certiorari Denied Oct. 21, 2002.

---

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

Ken Salazar, Attorney General, Evan W. Jones, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Lisa Dixon, Deputy State Public

Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge NEY.

Defendant, Dudley Stephenson, appeals from the judgment of conviction entered on jury verdicts finding him guilty of felony murder, aggravated robbery, and tampering with physical evidence. We reverse and remand for a new trial.

It is undisputed that defendant and his wife planned to steal a car. In response to a classified advertisement, they went to the victim's home. During the theft of his car, the victim was shot and killed. Defendant and his wife then left the scene in the victim's car.

The evidence at trial was disputed as to whether defendant or his wife was the shooter. Defendant's theory of the case was that he was guilty of theft, but not of aggravated robbery, because he did not intend to use force to steal the victim's car. He alleged that he was not armed and had no reasonable basis to believe that his wife was armed, and that she was the shooter. Therefore, under his theory, he could not be guilty of felony murder. *See* § 18–3–102(1)(b), C.R.S.2001.

## I.

On appeal, defendant contends that the trial court erred in admitting an out-of-court statement made by his wife. Because we conclude that admission of the statement violated defendant's rights under the confrontation clauses of the United States Constitution and the Colorado Constitution, we agree.

Defendant moved to exclude the wife's statements as inadmissible hearsay. The court granted the motion except as to the wife's statement to the police officer who first spoke with her after she voluntarily reported the crime. The court ruled that the statement was admissible as either an excited utterance or a statement against penal interest.

We conclude that the statement against penal interest exception to the hearsay rule would apply, but defendant's confrontation clause rights were violated nonetheless.

## A.

An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2).

■ Before a statement may be admitted under CRE 803(2), three requirements must be met: (1) the event must be sufficiently startling to render normal reflective thought processes of the observer inoperative; (2) the statement must be a spontaneous reaction to the occurrence; and (3) direct or circumstantial evidence must exist to allow the jury to infer that the declarant had the opportunity to observe the startling event. *People v. Dement*, 661 P.2d 675 (Colo.1983).

■ It is undisputed that defendant's wife witnessed the event, and it is clear that she was distressed at the time of the statement. However, defendant argues that her statement, given at least three hours after the shooting, was not a spontaneous response to a startling event that left no time for reflective thought. We agree.

After leaving the victim's home in the victim's car, defendant and his wife discussed their future conduct. They went to a restaurant where defendant discarded his shirt and the gun, and his wife called two friends to get advice or seek refuge. Ultimately, defendant's wife went to her mother's home and then to her mother's workplace. After talking with her daughter, the mother called 911 and reported that defendant had killed someone.

The police arrived, and the wife gave her statement to one of the officers. The officer testified that when she arrived, there was a frantic air in the room bordering on panic. The wife was speaking very quickly. Part of the statement was given in the narrative, and part was prompted by clarification questions asked by the officer.

Defendant's wife told the officer that she and defendant had planned the theft and jointly purchased a gun to use in the theft, and that defendant shot the victim. The statement, which was given at least three hours after the incident, was about five min-

utes in length. Defendant's wife was then taken into custody.

Defendant argues fifteen minutes is the longest delay between a startling event and an excited utterance that Colorado appellate courts have permitted. *See People v. Hulsing*, 825 P.2d 1027 (Colo.App.1991). *But see People v. Martinez*, 18 P.3d 831 (Colo.App.2000)(victim's statement, made within 15 or 20 minutes after she was removed from the scene, was an excited utterance); *People v. Fincham*, 799 P.2d 419 (Colo.App.1990) (allowing excited utterances of children made less than two hours after mother's abduction).

■ The excited utterance exception "has been liberally interpreted so as to extend to statements made following a lapse of time from the startling event itself." There is no bright-line time limitation "because the duration of stress will obviously vary with the intensity of the experience and the emotional endowment of the individual." *People v. Hulsing, supra*, 825 P.2d at 1031. *See also U.S. v. Alfonso*, 66 F.Supp.2d 261 (D.P.R. 1999).

Under the circumstances here, we conclude that the statement was so far removed from the startling event, with several independent interludes of reflective thought, that the trial court abused its discretion in admitting the statement as an excited utterance under CRE 803(2).

### B.

■ The statement against interest exception to the hearsay rule, as relevant here, permits the admission of a statement that "at the time of its making ... so far tended to subject [the declarant] to civil or criminal liability ... that a reasonable [person] in [the declarant's] position would not have made the statement unless [the person] believed it to be true." CRE 804(b)(3).

■ Trial courts are given wide discretion in determining the admissibility of evidence, including the admission of statements against penal interest. *See People v. Barnum*, 23 P.3d 1237 (Colo.App.2001)(*cert. granted* June 11, 2001).

■ As a threshold matter, CRE 804(b)(3) requires that the declarant be unavailable. *People v. Newton*, 966 P.2d 563 (Colo.1998). Here, there is no dispute that defendant's wife was unavailable based on her invocation of her Fifth Amendment privilege against self-incrimination. *See* CRE 804(a)(1); *People v. Farrell*, 34 P.3d 401 (Colo.2001); *Stevens v. People*, 29 P.3d 305 (Colo.2001).

■ Under CRE 804(b)(3), the statement must tend to subject the declarant to criminal liability, and the trial court must determine whether a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. *People v. Newton, supra.*

Defendant argues that his wife's statement was not a statement against her penal interest because, although it subjected her to criminal liability for the less serious charges, it subjectively served to exonerate her of the more serious charge of murder, which she attributed to defendant, and further, she did not seem to appreciate that her statement exposed her to criminal liability for the more serious charges. We are not persuaded.

We cannot say that the trial court abused its discretion in concluding that the wife's statement was against her penal interest. She admitted to participating in a planned theft of a car at gunpoint and to her peripheral involvement in the killing of the owner. *See People v. Newton, supra* (a statement may be against penal interest when it admits the declarant was an accessory to a robbery).

We therefore conclude that, although we might have reached a different result under these circumstances, the trial court did not abuse its discretion in concluding that the statement met the evidentiary criteria for admissibility under CRE 804(b)(3) as a statement against penal interest.

### C.

■ However, a statement that would be admissible as a hearsay exception under the rules of evidence may nevertheless be deemed inadmissible pursuant to the confrontation protections contained in the United States and Colorado Constitutions. U.S.

Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Stevens v. People, supra.*

■ Out-of-court statements offered against an accused are constitutionally admissible only if the prosecution demonstrates that: (1) the declarant is unavailable; and (2) the statements either fall within a "firmly rooted" hearsay exception or bear "particularized guarantees of trustworthiness." *Stevens v. People, supra,* 29 P.3d at 311 (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980)).

As previously noted, it is undisputed that defendant's wife was an unavailable declarant.

Furthermore, we conclude that because the wife's statement against penal interest was made to the police, it does not fall within a firmly rooted exception to the hearsay rule. *See Stevens v. People, supra,* 29 P.3d at 313 (although confessions made to fellow prisoners, family members, and friends may fall within a firmly rooted hearsay exception, "custodial confessions taken by law enforcement officers with a view to prosecution" are not within a firmly rooted exception). *See, e.g., People v. Jensen,* 55 P.3d 135 (Colo. App.2001) (statement was not inherently unreliable because co-defendant was not in custody and the statement was made to a friend).

Thus, our inquiry is whether the wife's statement here bore sufficient particularized guarantees of trustworthiness so as to be admissible.

■ Statements made by an accomplice that implicate another accused are presumptively unreliable. *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). This presumption is based on the "strong interest a co-defendant has in exculpating his actions while at the same time inculpating another." *Stevens v. People, supra,* 29 P.3d at 313.

■ To overcome this presumption of unreliability, particularized guarantees of trustworthiness must be inherent in the totality of the circumstances so that cross-examination of the declarant as to the truthfulness of the statement would be of "marginal utility."

*Stevens v. People, supra,* 29 P.3d at 311 (quoting *Lilly v. Virginia, supra,* 527 U.S. at 136, 119 S.Ct. at 1900, 144 L.Ed.2d at 134). The marginal utility test creates a "high burden of truthfulness." *People v. Farrell, supra,* 34 P.3d at 406.

In *Lilly v. Virginia, supra,* the Supreme Court reviewed an accomplice's statement admitting his involvement in a crime spree, but implicating the defendant of more serious crimes, such as murder. The plurality ruled that the accomplice's confession implicating the defendant did not fall within a "firmly rooted" hearsay exception and, furthermore, that there were not adequate guarantees of trustworthiness in the totality of the circumstances to overcome the presumption of unreliability of an accomplice's statements.

In *Stevens v. People, supra,* the Colorado Supreme Court applied the rationale of *Lilly v. Virginia, supra,* to a murder-for-hire case in which the declarant made a custodial confession that he was the shooter, but inculpated the accused as soliciting the murder. The court first concluded that the hearsay statement was admissible as a statement against penal interest by an unavailable witness, and that the statement was not within a firmly rooted exception to the hearsay rule. *Stevens v. People, supra,* 29 P.3d at 313.

The *Stevens* court further concluded that custodial confessions by a co-defendant inculpating the accused are "presumptively unreliable," and therefore such statements are only admissible if they are supported by guarantees of trustworthiness. *Stevens v. People, supra,* 29 P.3d at 313.

Next, in analyzing whether the statement bore sufficient guarantees of trustworthiness, the court looked at the "totality of the circumstances surrounding the making of the statement." *Stevens v. People, supra,* 29 P.3d at 314; *see People v. Newton, supra* (the statement must possess reliability by its inherent trustworthiness, not by reference to other evidence at trial).

■ Courts have "considerable leeway in their consideration of appropriate factors" to determine whether guarantees of trustworthiness exist. *Stevens v. People, supra,* 29 P.3d at 314 (quoting *Idaho v. Wright,* 497

U.S. 805, 822, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638, 656 (1990)). Such factors may include, but are not limited to: the declarant's motivation for making the statement; the circumstances, such as place and time, under which the statement was made; the relationship of the declarant to the listener, e.g., the police as opposed to family; whether the statement was voluntary or coerced; the content of the statement, e.g., the level of detail and the declarant's personal knowledge of the events; whether the statement was obtained in exchange for a benefit; and the mental and physical condition of the declarant. *Stevens v. People, supra.*

The *Stevens* court continued its analysis by determining that "the most important determination as to its trustworthiness is whether the statement at issue is genuinely self-inculpatory or whether it shifts the blame from the confessor to the defendant." *Stevens v. People, supra,* 29 P.3d at 314. *See also People v. Farrell, supra.* However, "an evaluation as to whether a statement is genuinely self-inculpatory is only one of the factors to be analyzed and is not by itself dispositive." *Stevens v. People, supra,* 29 P.3d at 315.

The *Stevens* court analyzed the circumstances surrounding the statement, emphasizing that the declarant "did not minimize his involvement in the murder nor did he shift the responsibility for committing the murder to the defendant." *Stevens v. People, supra,* 29 P.3d at 315. The court concluded that the statement was supported by sufficient guarantees of trustworthiness to overcome the presumption of unreliability, and the statement was "genuinely self-inculpatory and was not designed to shift the blame to the defendant or to curry favor with law enforcement officials." *Stevens v. People, supra,* 29 P.3d at 318.

Subsequently, in *People v. Farrell, supra,* the supreme court reviewed the admission of an unavailable co-defendant's statement against interest, which implicated the defendant and was made in the course of a custodial interrogation. The *Farrell* court applied the rationale of *Stevens v. People, supra,* to conclude that the statement was admissible because it contained sufficient guarantees of trustworthiness. Specifically, the court stat-

ed that "the most important factor in evaluating the reliability of the tendered statement is whether it was genuinely self-inculpatory," as opposed to the case where the statement served to "merely [shift] the blame from the declarant to the defendant." *People v. Farrell, supra,* 34 P.3d at 407.

In evaluating the facts presented there, the *Farrell* court determined that the statement was "blatantly self-inculpatory," because the co-defendant accepted direct culpability and did not attempt to minimize his own involvement, attributed many of the most incriminating actions to himself, and accepted sole responsibility for some of the crimes. Furthermore, the statements inculpating the defendant were inextricably intertwined with the self-inculpatory portions of the co-defendant's confession. The court also looked at additional factors of the statement's reliability to support its conclusion that the statement was constitutionally admissible: the high level of detail; the fact it was made immediately after the criminal episode; the absence of police coercion or offers of special treatment; the absence of evidence of a retaliative motive; and the apparently unimpaired mental or physical condition of the co-defendant.

In both *Stevens* and *Farrell,* the supreme court reviewed statements that were genuinely self-inculpatory in that they did not shift the blame for the most serious crimes from the declarant to the defendant, nor did the statements minimize the declarant's involvement. Thus, in those cases, the "most important" factor for assessing if the intrinsic truthfulness of the statement—its unquestionably self-inculpatory nature—acted to overcome the presumption that statements made by an accomplice are unreliable.

Here, in contrast, the wife's statement was not genuinely self-inculpatory because it included both inculpatory and exculpatory blame-shifting elements. The statement was an admission of the wife's involvement in the crimes, but, in contrast to the statement in *Stevens* and *Farrell,* also subjectively served to exonerate her of the murder. While the felony murder doctrine may render this distinction legally moot, such distinction does not purge the statement of its blame-shifting

component, and thus of its suspect nature, because it acted to shift and spread the blame to defendant.

Neither *Stevens* nor *Farrell* addressed the issue presented here, where the factors for assessing the inherent reliability of the statement at issue both support and detract from its trustworthiness.

■ Here, on the one hand, factors supporting a determination of trustworthiness are that the statement was made after the wife's mother called the police and before the wife was in custody. No lenient treatment was offered in exchange for the statement, and no police coercion was used. Apparently, much of the statement was in narrative form and was given under stressful circumstances. Finally, there was no evidence that the wife was mentally or physically unstable.

On the other hand, factors detracting from the statement's trustworthiness include the wife's awareness that she would be connected to the crimes because she had left her mother's truck at the scene. Thus, she had a strong motivation to distance herself from the more serious crime of murder, and therefore the fact that she voluntarily spoke to the police is less compelling.

Moreover, the wife's statement was made to the police, not to a friend or family member, it shifted the blame to defendant for the shooting, and it minimized her participation. Additionally, the wife's statement, as it related to defendant's actions, consisted of generalizations that lacked detail. Moreover, her professed motivation for the statement—to bring aid to the victim—is questionable because she waited several hours before contacting police and stated that she did not know where the victim's house was, although she admitted that she had driven there and back earlier that afternoon.

We conclude that the factors detracting from the trustworthiness of the wife's statement significantly outweigh the factors in favor of trustworthiness.

Thus, applying the rationale of *Lilly, Farrell,* and *Stevens* to the case before us, we conclude that admission of the wife's statement violated defendant's rights under the confrontation clause because the presumption of unreliability was not overcome by guarantees of trustworthiness, in that it is not "so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility" in assessing the truthfulness of the statement. *See Stevens v. People, supra,* 29 P.3d at 311 (quoting *Lilly v. Virginia, supra,* 527 U.S. at 136, 119 S.Ct. at 1900, 144 L.Ed.2d at 134).

Specifically here, cross-examination would be beneficial and not of marginal utility to test the truthfulness of the wife's statement with regard to her professed motivation for contacting the police, the lack of detail she provided regarding the actual shooting, and her inability to tell police where the murder took place despite the fact she drove there and back.

Therefore, the admission of the wife's statement violated defendant's rights under the confrontation clauses of the United States and Colorado Constitutions.

### D.

Because we have concluded that the admission of the wife's statement was constitutionally erroneous, we must determine whether the error rises to the level of reversible error or was harmless beyond a reasonable doubt.

■ To find a constitutional error harmless, an appellate court must be confident beyond a reasonable doubt that the error did not contribute to the guilty verdict. *See* C.R.C.P. 61; *Griego v. People,* 19 P.3d 1 (Colo.2001); *Blecha v. People,* 962 P.2d 931, 942 (Colo.1998)(harmless error test "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error").

■ Here, defendant gave conflicting statements to police: he first claimed to know nothing about the shooting; he then claimed that his wife shot the victim; and finally, he admitted to shooting the victim. At trial he testified that he falsely confessed to the murder because that is what the police "wanted to hear."

Defendant's theory of the case was that he was not guilty of aggravated robbery because he did not intend to use force in robbing the victim of his car, and he did not know that his wife was armed. He contends that he therefore was not guilty of felony murder. Thus, the erroneous admission of the wife's statement, that they had both intended to use the gun to rob the victim and that defendant was the shooter, results in a "reasonable probability" that defendant has been prejudiced by the error. *See Blecha v. People, supra,* 962 P.2d at 942.

Therefore, we cannot conclude that the error was harmless, and we reverse defendant's conviction and remand for a new trial.

## II.

Because this issue is likely to recur on retrial, we address defendant's contention that the trial court erred in admitting the videotape of his statement to police. We find no error.

While in police custody, defendant made a statement that was videotaped. During the interrogation, he initially denied all responsibility for the murder and accused his wife of shooting the victim. After the interrogating officer indicated that he did not believe defendant's story, defendant asked for a cigarette break and stated that he would then tell "everything." Following the break, defendant admitted that he shot the victim.

Defendant filed a motion *in limine* to suppress the videotaped statement. The trial court found, with evidentiary support, that the statement was taken after defendant had waived his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court analyzed the totality of the circumstances to conclude that the statement was voluntary.

## A.

Defendant first argues that the trial court erred in determining that his statement was voluntary. We disagree.

■ The test for voluntariness requires consideration of the totality of all surrounding circumstances, including the characteristics of the accused and the details of the interrogation, to determine whether the defendant's will was overborne by coercive police conduct. *People v. Rivas,* 13 P.3d 315 (Colo.2000).

■ The prosecution has the burden to establish by a preponderance of the evidence that the defendant made the statement voluntarily. *People v. Valdez,* 969 P.2d 208 (Colo.1998). "[A] trial court's findings of historical fact are entitled to deference by a reviewing court, but the trial court's application of legal standards to those facts is treated as a question of law to be reviewed de novo." *People v. Rivas, supra,* 13 P.3d at 320.

■ Defendant maintains that the police used coercive techniques such as: questioning him in the police station; badgering him about how he and his wife planned to pay for the victim's car without apparent means to do so; claiming that the police had "independent evidence" that defendant shot the victim; and characterizing the confession as an "opportunity," which, he claims, was an implied promise of leniency in return for confessing. Defendant also argues that he was particularly susceptible to these techniques because he was in police custody, did not confer with counsel, had drugs and alcohol in his system and was fatigued, and because the interview was lengthy.

■ A necessary prerequisite to a conclusion of involuntariness is a finding that the police conduct in question was coercive and that the coercive conduct "played a significant role in inducing the statements." *People v. Valdez, supra,* 969 P.2d at 212.

We cannot conclude that the police interrogation techniques here were coercive. *See, e.g., People v. Valdez, supra* (police conduct that was angry, confrontational, and condemning was not coercive). We also cannot conclude that defendant's will was overborne by improper state conduct. *See, e.g., People v. Cardenas,* 25 P.3d 1258 (Colo.App.2000)(finding a statement voluntary even though the defendant was under the influence of drugs and alcohol). Additionally, we disagree with defendant's contention that by giving him an "opportunity" to

confess, the police implied a promise of leniency. *See, e.g., People v. Trujillo,* 938 P.2d 117 (Colo.1997)(statement was voluntary when police did not promise the defendant anything in return for a confession).

Thus, the trial court did not err in finding that the statement was voluntarily given. *See People v. Cardenas, supra* (a statement is voluntary when it is not the product of threats or violence and not obtained by any direct or implied promises or by the exertion of any improper influence).

### B.

Defendant also contends that the trial court erred in admitting the videotape because the initial portion of the tape, in which defendant denied responsibility for the murder, was partially inaudible and his face was blocked from view. We find no error.

The trial court has broad discretion in determining the admissibility of tape recordings, and their admission will not be disturbed on appeal in the absence of an abuse of discretion. *People v. Jeffers,* 690 P.2d 194 (Colo.1984).

Defendant has failed to show how he was prejudiced by the inaudible portions of the videotape. The record reveals that the videotape clearly conveyed that defendant initially denied any responsibility for the murder and then, after the break, admitted that he was the shooter.

Therefore, we conclude defendant has not shown prejudice. *See People v. Jeffers, supra* (ruling no prejudice was shown when the defendant failed to establish how the inaudible segments affected the tapes' reliability). Accordingly, the trial court did not abuse its discretion in admitting the videotape. *See People v. Quintana,* 189 Colo. 330, 540 P.2d 1097 (1975)(even though parts of an audiotaped statement were inaudible, this fact did not render the entire recording inadmissible).

### III.

We also address defendant's contention that notebooks given to the jury contained information that conflicted with the jury instructions given in his case.

Crim. P. 16(IV)(f) requires that notebooks be available for jurors during felony trials. The notebooks here contained general information that defendant objected to as inapplicable or contrary to the circumstances of his case. Specifically, he challenged the following information contained in the notebooks: that the only difference between a civil and a criminal case is what the parties are called and who represents them; that defendants testify and present evidence; that a defendant could receive a deferred sentence or probation; that every sentence is for a finite period of time; and that a defendant is eligible for parole.

Although we find no reversible error because defendant has not shown prejudice in this case, to avoid confusion in the new trial, the court is directed to edit and correct the information contained in the notebooks.

### IV.

Defendant's remaining contentions of error are unlikely to arise on retrial. Therefore, we will not address them.

The judgment is reversed, and the case is remanded for a new trial.

Judge METZGER and Judge TAUBMAN concur.