Opinion by JUDGE DAILEY
*4 ¶ 1 Defendant, Christopher Alexander Pernell, appeals the judgments of conviction entered on jury verdicts finding him guilty of violation of a restraining order, first degree burglary, menacing (two counts), second degree kidnapping, sexual assault, and commission of a violent crime (three counts). We affirm.
I. Background
¶ 2 In violation of a restraining order, defendant went to his ex-wife's home one evening while she and her boyfriend were inside. According to the ex-wife and boyfriend,
• when the ex-wife unlocked the front door, defendant pushed it open, knocking her to the floor;
• defendant removed a gun from a bag he was carrying, held it to the boyfriend's temple, and said "bam" or "bang";
• defendant ordered the couple to sit at the dining room table, where, while acting "agitated" and "jittery," he questioned the boyfriend about his relationship with the ex-wife; and,
• defendant eventually calmed down and agreed to let the boyfriend leave the house.
¶ 3 According to the ex-wife,
• defendant ordered her into the bedroom at gunpoint, put the gun on the dresser, had her remove her clothes, pushed her down on the bed, and had sexual intercourse with her over her objection;
• when defendant got off her, she took the gun and ran, naked, to the front door, where she was caught by defendant; and,
• defendant took the gun, pointed it at her head, and left after she promised not to call the police.
¶ 4 The next morning, after spending the rest of the night at her boyfriend's house and driving back to her own house, the ex-wife reported the incident to the police.
¶ 5 At trial, the prosecution introduced, in addition to the testimony of the ex-wife and the boyfriend, a police recording and transcript of a phone conversation between defendant and the ex-wife the day after the incident. After the ex-wife stated that she was afraid of defendant because "[he] pointed a gun at [her], [he threatened to kill her]" and "made [her] have sex with [him]," defendant responded, "I know, I know. That's the reason I got rid of [the gun] and I, I promise you that my word that that is done." When the ex-wife further said that defendant "raped" her, despite her begging him not to "do it," he stated, "Um, I, I'm sorry. I wasn't in my right frame of mind."
¶ 6 The prosecution also introduced evidence of defendant's prior acts toward his ex-wife:
• He accused her of cheating on him and forced his hands down her pants during a Christmas dinner with their children;
• He came to her house, questioned her about having a relationship with another man, and followed her to a meeting with her friend at Starbucks;
• He sent her a sexually suggestive e-mail that prompted her to get the restraining order, and;
• He came to her house on a second occasion, asked her where she was the previous night, and accused her of leaving their children alone to go see another man.
¶ 7 Defendant did not testify on his own behalf or present any evidence. His attorney argued that, although defendant went to the ex-wife's home, he did not bring a gun and he had consensual sex with his ex-wife. Counsel asserted that, afterwards, she fabricated the incident with help from the boyfriend to keep him away from defendant's and his ex-wife's *5 two children. To support this argument, counsel pointed to the fact that the boyfriend never contacted police, and that the ex-wife had waited until the next morning to report the assault. Counsel argued that she attempted to "make the story look more believable" by changing from her skirt into pants before making the report, which she did because "[w]hen you report rape, it would be better to wear pants than a skirt."
¶ 8 Additionally, defendant's attorney attacked the victim's credibility by arguing that the ex-wife had looked down rather than at the jury for the majority of her testimony and that both she and her boyfriend had given "evasive" testimony.
¶ 9 The jury convicted defendant as charged and the trial court sentenced him to a controlling term of fifty-eight years to life imprisonment in the custody of the Department of Corrections.
II. Challenge for Cause
¶ 10 Defendant contends that the trial court erred in granting the prosecution's challenge for cause to prospective Juror H. We disagree.
¶ 11 Section 16-10-103(1)(j), C.R.S.2014, and Crim. P. 24(b)(1)(X) require disqualification of a juror if his or her state of mind manifests a bias for or against either side, unless the court is satisfied that the juror will render an impartial verdict based solely upon the evidence and instructions of the court. See Morrison v. People, 19 P.3d 668, 672 (Colo.2000) ; People v. Shreck, 107 P.3d 1048, 1057 (Colo.App.2004).
¶ 12 We give great deference to the trial court's determination of a challenge for cause because such decisions turn on an assessment of the potential juror's credibility, demeanor, and sincerity in explaining his or her state of mind. Because the trial court is in a better position to evaluate these factors than a reviewing court, we will overturn a trial court's decision concerning a challenge for cause only upon an affirmative showing by the defendant that the court abused its discretion. People v. Wilson, 2014 COA 114, ¶ 10, 356 P.3d 956.
¶ 13 A trial court abuses its discretion in this context only if there is no evidence in the record to support its decision. People v. Richardson, 58 P.3d 1039, 1042 (Colo.App.2002) ; see also Carrillo v. People, 974 P.2d 478, 486 (Colo.1999) (an appellate court must examine the entire voir dire of the prospective juror).
¶ 14 Here, prospective Juror H indicated that she had doubts about her ability to be fair and impartial because her son had been accused of burglary in connection with a domestic violence incident, stating:
• Her son's case "possibly could affect [her] thought process throughout it all";
• "[A]fter being with [her son] through the whole legalities of it all, the repercussions of his act, it's-it would be hard for [her] to be impartial";
• The victims would "probably" not want her as a juror, her "being a mother of someone who-being so close to my son, having gone through it with him, it's hard to be impartial";
• She "would try" to listen to the evidence knowing one of the charges in the case was the charge that had been brought against her son; and
• She would "have a hard time with" finding the defendant guilty because he could face time in prison.
¶ 15 In response to leading questions propounded by the defense, however, she indicated that she could listen to the case and reserve judgment until hearing all the evidence, follow the court's instructions and apply the facts to the law, and not consider sentencing when deciding the case.
¶ 16 The prosecutor challenged prospective Juror H for cause, and the court denied the request.
¶ 17 During subsequent voir dire in open court, prospective Juror H gave additional responses suggesting she was doubtful of her ability to be fair:
• She "probably would have a problem with" the charges other than assault, including following the law as to any slight movement being sufficient for kidnapping;
*6 • When asked if she could follow the law even if she didn't agree with it, she said, "yeah, I guess I could";
• She agreed with the prosecutor that "this would be a really hard case [for her] to listen to or be a part of," although she said she "could certainly try" to be fair to all parties and listen to all the evidence honestly; and
• When asked if she could be a juror in this case, she said, "No."
¶ 18 Again, defense counsel had prospective Juror H confirm, in response to leading questions, that she could listen to the case and reserve judgment until hearing all evidence and follow the court's instructions.
¶ 19 The prosecutor challenged prospective Juror H for cause a second time, noting that "[h]er eyes welled up with tears as she talked about" her son's conviction. Defense counsel argued that prospective Juror H had said she could follow the court's instructions and reserve judgment until hearing all the evidence. The court granted the challenge.
¶ 20 Although prospective Juror H agreed with defense counsel that she could follow the court's instructions and reserve judgment until hearing all the evidence, the record also indicates that she was deeply conflicted about her ability to be fair given her experience with her son's case. Indeed, the prosecutor indicated that she "teared up" when talking about how the case would affect her. Because her answers were equivocal and conflicting, it was for the court to weigh and determine the sincerity and credibility of these responses. The court acted within its discretion in removing prospective Juror H because it was not satisfied she would render a fair and impartial verdict. See Wilson, ¶¶ 19-22 (upholding the removal of a prospective juror who, despite other assurances that he could be fair, said he "c[ould]n't honestly say yes or no," whether, in deciding the case, he would consider the "unfair[ ]" way a friend had been treated in the criminal justice system); People v. Mack, 33 P.3d 1211, 1217-18 (Colo.App.2001) (the trial court acted within its discretion in granting prosecution's challenge for cause to juror who, despite assuring the court that he could be objective, also said he "would be very harsh on how [the prosecution] proved [its] case," did not think the drug laws were fair, and had seen drug prosecutions "destroy people's lives"); People v. Schmidt, 885 P.2d 312, 315 (Colo.App.1994) (the trial court did not abuse its discretion in granting prosecution's challenge for cause to juror who, despite saying "she would 'probably not' be unfair and, if selected, would not render a verdict contrary to the law and evidence," expressed a discomfort acting as a juror in a sexual assault case because of her religious beliefs).
¶ 21 Even assuming that the court erred by dismissing prospective Juror H for cause, reversal would not be required. This follows, because defendant did not challenge for cause any prospective jurors who ultimately sat on the jury at trial. See People v. Wise, 2014 COA 83, ¶ 28, 348 P.3d 482 (to show prejudice sufficient to require reversal, "the defendant ordinarily must show that a biased or incompetent juror participated in deciding his guilt"); see also People v. Marciano, 2014 COA 92M-2, ¶ 10, 411 P.3d 831 ("Where the challenged juror did not [participate in determining the defendant's guilt], our supreme court's recent decision in Novotny requires that a defendant ordinarily must show that a different biased or incompetent juror sat on the jury.").
¶ 22 In so concluding, we necessarily reject defendant's argument that "retroactive" application of the supreme court's decision in People v. Novotny 2014 CO 18, 320 P.3d 1194, would violate defendant's due process right to fair warning. In Wise, the division rejected an identical argument. Wise, ¶ 14. Because we agree with the reasoning underlying the rejection of this argument, we too conclude that the principles announced in Novotny may be properly applied to defendant's case.
III. Mistrial
¶ 23 We also reject defendant's contention that reversal is required because the court erroneously denied his motions for a mistrial.
¶ 24 " 'A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other *7 means.' " People v. Cousins, 181 P.3d 365, 373 (Colo.App.2007) (quoting People v. Dore, 997 P.2d 1214, 1221 (Colo.App.1999) ). We review a court's denial of a motion for a mistrial for an abuse of discretion. Cousins, 181 P.3d at 373. Factors relevant in considering whether a mistrial should be declared include the value of a cautionary instruction and the nature of the inadmissible evidence. People v. Vigil, 718 P.2d 496, 505 (Colo.1986).
¶ 25 Notably, "[a] motion for a mistrial is more likely to be granted where the prosecutor intentionally elicited" the improper evidence. People v. Everett, 250 P.3d 649, 662 (Colo.App.2010).
¶ 26 An error in a trial court's ruling on a motion for mistrial is subject to harmless error review. See, e.g., United States v. Lucas, 516 F.3d 316, 345 (5th Cir.2008) ("When improper evidence is introduced to the jury but a defendant's subsequent motion for mistrial is denied, we review the denial for abuse of discretion, and if we find error, we apply harmless error review." (footnote omitted)); see also People v. Santana, 240 P.3d 302, 309 (Colo.App.2009) (court's error in refusing to grant mistrial based on a constitutional violation subjected to constitutional harmless error review), rev'd on other grounds, 255 P.3d 1126 (Colo.2011) (finding no constitutional violation and, consequently, declining to address whether constitutional harmless error review applies).
A. Ex-Wife's Statements to Police
¶ 27 Defendant contends that the trial court should have granted his motion for mistrial based on the erroneous admission of an officer's testimony in which he recounted the ex-wife's description of the incident twelve hours after it occurred. We are not persuaded.
¶ 28 To lay a foundation for admitting the statements as excited utterances under CRE 803(2), the prosecutor questioned the officer about the ex-wife's demeanor during the interview. According to the officer, the ex-wife was "visibly distraught" with her "head and eyes down," and "[s]he appeared traumatized, to still be traumatized from the event that had happened [twelve] hours prior." When asked to explain what he meant by distraught, the officer explained that "she was afraid, really to the point of probably being terrified. Her head was down. Her eyes were down. She spoke pretty much the whole entire time in a monotone demeanor."
¶ 29 The court permitted the officer to testify to the ex-wife's description of events[1] as an excited utterance, ruling, at one point, that the statements "just barely" qualified as excited utterances, and, at another, that the foundation for admitting the statements was "razor thin" but "just enough" to show that the ex-wife was still under the stress of the incident when she made the statements.
¶ 30 We review a trial court's ruling on the admission of evidence for an abuse of discretion. People v. Suazo, 87 P.3d 124, 127 (Colo.App.2003). A court abuses its discretion when its ruling is (1) based on an erroneous understanding or application of the law or
(2) manifestly arbitrary, unreasonable, or unfair. People v. Esparza-Treto, 282 P.3d 471, 480 (Colo.App.2011).
¶ 31 An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2). For a statement to be admitted as an excited utterance, the proponent of the statement must show (1) the event was sufficiently startling to render normal reflective thought processes of the observer inoperative; (2) the statement was a spontaneous reaction to the event; and (3) direct or circumstantial evidence exists to allow the jury to infer that the declarant had the opportunity to observe the startling event. People v. Compan, 100 P.3d 533, 536 (Colo.App.2004), aff'd, 121 P.3d 876 (Colo.2005).
*8 ¶ 32 "The trial court is in the best position to consider the effect of the startling event on the declarant and is therefore accorded wide discretion in determining admissibility under the excited utterance exception." Id. While "[t]here is no bright-line time limitation 'because the duration of stress will obviously vary with the intensity of the experience and the emotional endowment' " of the declarant, the statement must, nonetheless, evince a spontaneous reaction to a startling event rather than the operation of normal reflective thought processes. People v. Stephenson, 56 P.3d 1112, 1116 (Colo.App.2001) (quoting People v. Hulsing, 825 P.2d 1027, 1031 (Colo.App.1991) ).
¶ 33 In Stephenson, the declarant went to a restaurant and her mother's home and workplace and spoke to four people before giving statements to police at least three hours after witnessing her husband shoot someone. 56 P.3d at 1115. Although it was "clear that [the declarant] was distressed at the time of the statement" and was speaking quickly with a "frantic air in the room bordering on panic," the division held that it was error to admit her statements as excited utterances. Id. at 1115-16. According to the division, the lapse in time between the shooting and her statements allowed for "several independent interludes of reflective thought" that removed the required spontaneity from her statements. Id. at 1116.
¶ 34 After the incident in this case, the ex-wife drove to her boyfriend's house, spent the night there, and told him about the sexual assault. The next morning, she drove home, changed her clothes, and drove to the police station where she made the statements challenged here. While the ex-wife spoke only to the boyfriend during the twelve hours between the incident and her statement, both on the phone and in person, she went to two different locations before finally driving to the police station. Despite the officer's description of the ex-wife as "distraught," "traumatized," and "terrified," the evidence indicates that the ex-wife had "several independent interludes of reflective thought" that rendered her statements less than spontaneous. Indeed, the ex-wife's own testimony indicated that she engaged in such reflective thought: she stated that she had changed her clothes before reporting the incident to the police because "[w]hen you report rape, it would be better to wear pants than a skirt."
¶ 35 In view of these circumstances, we conclude that the trial court erred in admitting the statements as excited utterances.
¶ 36 That said, reversal is not required because, in our view, the statements were admissible on an alternative basis. See People v. Quintana, 882 P.2d 1366, 1375 (Colo.1994) ("A defendant's conviction will not be reversed if a trial court reaches the correct result although by an incorrect analysis."); see also People v. Aarness, 150 P.3d 1271, 1277 (Colo.2006) (appellate court may affirm trial court's ruling on different grounds); see also People v. Garcia, 2012 COA 79, ¶ 62, 296 P.3d 285 ("We may affirm ... on any ground that is supported by the record.").
¶ 37 Here, the ex-wife's statements were admissible as prior consistent statements to rehabilitate her credibility after defendant had attacked it. People v. Eppens, 979 P.2d 14, 21 (Colo.1999).[2]
¶ 38 Defendant's theory of the case was that his ex-wife had fabricated her allegations with help from her boyfriend, asserting in opening argument that
[t]his is a simple case about an ex-wife who will do and say anything to keep her husband out of their children's lives .... the reason, ladies and gentlemen, you will hear from the evidence, that it took a day and a half to go to the police is, because it didn't happen. It didn't happen because [the ex-wife and her boyfriend] were concocting *9 their story to get [defendant] out of their lives.
¶ 39 Further, defendant's attorney vigorously examined the ex-wife about her "version of the events" and her prior statements, asking her if certain details were "part of the story [she] came up with." This is precisely the kind of attack on a witness's credibility that allows for the introduction of prior consistent statements to rehabilitate that witness. See People v. Tyler, 745 P.2d 257, 259 (Colo.App.1987) (holding that where impeachment is aimed at specific facts, consistent statements should be admitted only as to those facts; but where the impeachment is general in nature, including the implication that the victim's story was "fabricated or contrived," it was proper to give the jury access to all the relevant facts, including the victim's entire report to police detailing her story).
¶ 40 Although the ex-wife's statements to the officer were admitted before the ex-wife testified, defense counsel's accusations of fabrication in his opening statement opened the door to the admission of her statements. See People v. Davis, 312 P.3d 193, 196-97 (Colo.App.2010) (an opening statement can "open the door" to otherwise inadmissible evidence), aff'd on other grounds, 2013 CO 57, 310 P.3d 58 ; see also, e.g., United States v. Magallanez, 408 F.3d 672, 678 (10th Cir.2005) (same); Terry v. State, 332 Md. 329, 631 A.2d 424, 428-29 (1993) (same); but cf. Melton v. Larrabee, 832 P.2d 1069, 1071 (Colo.App.1992) ("[D]efense counsel's opening statement, standing alone, did not require the court to admit plaintiff's proffered evidence.").
¶ 41 And, even if defense counsel's accusations in opening statement had not opened that door, the evidence would have been admissible after defense counsel's cross-examination of the ex-wife, rendering harmless any error in its premature admission. See United States v. Beckman, 222 F.3d 512, 523-24 (8th Cir.2000) ("In light of the fact that the evidence would eventually have been admissible and the lack of a showing that the arguably premature admission carried any prejudice, we find any error harmless.") (footnote omitted); United States v. Arroyo-Angulo, 580 F.2d 1137, 1147 (2d Cir.1978) ("In view of the inevitability of defense counsels' attack on [the government witness's] credibility and the formidable assault which in fact was made in the defense openings, cross-examinations and summations, the error in the timing of the introduction of the cooperation agreement does not require reversal in this case.").
B. Boyfriend's Reference to Defendant's "Confession"
¶ 42 During the boyfriend's redirect testimony, the prosecutor asked him about his testimony on cross-examination that he had followed the ex-wife home before she went to talk with police. The prosecutor asked whether the boyfriend had ever told the ex-wife that he followed her home, and the boyfriend responded that he only told her "probably several weeks afterward." When the prosecutor asked the boyfriend to "describe the conversation," the boyfriend responded, "I am referring to the conversation we had-was between [the ex-wife] and I-that [defendant] had been arrested, that [defendant] had confessed, and...."
¶ 43 Defense counsel immediately objected and moved for a mistrial. Out of the presence of the jury, the prosecutor argued that defendant had confessed during the police-recorded phone call between him and his ex-wife and that the jury would receive the recording. Defense counsel argued that the recording did not contain a confession. The court reserved ruling until it could listen to the recording. The next day, it ruled that the recording contained neither a direct admission nor a direct denial of the alleged conduct. But because the prosecutor had not deliberately elicited the statement, the court denied the motion and gave the jury the following curative instruction requested by defense counsel:
At the end of [the boyfriend]'s testimony yesterday, he made reference to a, quote, confession, which is a factual and legal determination that he is not qualified to make. It is likely that you will hear recorded evidence of a phone conversation between [defendant and the ex-wife]. It is up to you to decide whether or not the *10 information contained in that conversation constitutes a confession.
In the final instructions, the court included a similar instruction that referenced the recorded conversation that had been played for the jury and advised the jury that it should determine whether or not defendant's statements constituted a "confession."
¶ 44 A jury is presumed to have followed a curative instruction to disregard improper testimony or statements. People v. Tillery, 231 P.3d 36, 43 (Colo.App.2009), aff'd sub nom. People v. Simon, 266 P.3d 1099 (Colo.2011). A curative instruction is adequate unless "the improper testimony or statements are so prejudicial that, but for the exposure, the jury might not have found the defendant guilty." Id.
¶ 45 Here, by twice giving defendant's proposed curative instruction (in open court and in the written instructions), the trial court ensured that the jury would make its own determination as to whether defendant "confessed" in the recorded conversation. Cf. People v. Salazar, 39 Colo.App. 409, 411, 568 P.2d 101, 103 (1977) (no mistrial required where the court indicated in the presence of the jury that the chain of custody of drugs was sufficient but gave a contemporaneous curative instruction advising the jury that it should determine on its own whether the chain of custody was, in fact, sufficient).
¶ 46 Further, by suggesting to the jury that the boyfriend was merely referring to defendant's statements in the recorded conversation, the instruction virtually eliminated any possibility that the jury would think the boyfriend was referring to another confession, i.e., one made to the police. Accordingly, any prejudice was speculative and adequately addressed by the curative instruction. See People v. Ned, 923 P.2d 271, 275 (Colo.App.1996) ("Speculation of prejudice is insufficient to warrant reversal of a trial court's denial of a motion for mistrial.").
¶ 47 And, as noted by the trial court, the prosecutor did not deliberately elicit the boyfriend's reference to a confession by defendant. Thus, the court acted within its discretion in denying the motion. See Bloom v. People, 185 P.3d 797, 807-08 (Colo.2008) (witness's "inadvertent" comment that the defendant failed a polygraph test did not require a mistrial); Everett, 250 P.3d at 662 (mistrial not warranted where prosecutor's reference to the defendant's prior incarceration was a "mistake"); People v. Scott, 10 P.3d 686, 689 (Colo.App.2000) (trial court acted within its discretion to deny a mistrial motion where victim's remark was "adduced inadvertently"); People v. Lawson, 37 Colo.App. 442, 446, 551 P.2d 206, 210 (1976) (mistrial not required where evidence that witness knew defendant previously from "county jail" not intentionally elicited by prosecution and curative instruction was given).
C. Ex-Wife's Statement That She Had Never Reported "It"
¶ 48 During direct examination of the ex-wife, she indicated that, after the assault, she was not sure if she was going to report the incident because she believed that "If I report him and he gets out of jail, he'll kill me." As defense counsel was objecting to this statement, the ex-wife continued, "I had never reported it, so...." Defense counsel immediately moved for a mistrial, arguing that "[w]hen she's talking about I never reported it, it makes it sound like it has happened on previous occasions, that there's other things going on, which is well beyond the 404(b) ruling."
¶ 49 The court denied the motion, ruling, "The answer, 'I never reported it' just kind of came out of the blue. I don't think it's clear what she's talking about."
¶ 50 Notably, the ex-wife had already described four prior incidents, admitted pursuant to CRE 404(b) : two occasions where defendant had come to her house or followed her and asked her about her relationships with other men, one occasion where he had sent her a sexually suggestive email, and another occasion where he had put his hands down her pants without permission.
¶ 51 In light of this evidence, the jury most likely would have interpreted the ex-wife's statement as referring to one of the incidents she had already described but had not reported to police. See People v. Williams, 2012 COA 165, ¶ 23, 297 P.3d 1011 (denial of *11 a request for mistrial affirmed where the "statement was not substantially prejudicial because it was cumulative of other admissible testimony"); People v. Perea, 126 P.3d 241, 246 (Colo.App.2005) (affirming denial of request for mistrial for testimony about the defendant's smoking marijuana, in light of similar uncontested and admissible evidence).
¶ 52 The ex-wife's statement was brief, ambiguous, and made "out of the blue," without prompting from the prosecutor. Under these circumstances, the trial court did not abuse its discretion in denying defendant's motion for mistrial. See Scott, 10 P.3d at 689 (court acted within its discretion to deny mistrial motion where witness's repetition of victim's statement, "I'm tired of [the defendant] doing this," was "ambiguous, did not explicitly refer to any prior assault by defendant, and could well have referred to" a previously admitted assault); see also Everett, 250 P.3d at 662 (mistrial not required where reference to the defendant's prior incarceration was "fleeting and ambiguous" and a finding of prejudice "require[d] speculation").
D. Ex-Wife's Suggestion That Defendant Testify
¶ 53 On recross-examination, defense counsel asked the ex-wife whether she could "speak of what [defendant] was thinking about or talking about or what he thought the [police-recorded] conversation was going or where it was-had been." She responded, "No, he needs to come up here and do that."
¶ 54 Defense counsel moved for a mistrial, arguing that the ex-wife's comment had infringed upon his constitutional right to remain silent. Although it did not immediately rule on the motion, the court struck the ex-wife's comment and instructed the jury that a defendant is never compelled to testify and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way.
¶ 55 The court later denied the motion for mistrial, finding that the statement (1) was not a deliberate attempt to interfere with defendant's right to remain silent; (2) was a logical response to defense counsel's question regarding whether the ex-wife knew what defendant was thinking; and (3) did not implicate defendant's guilt because it was not directed at the elements of the crimes or the defense of consent.
¶ 56 If a defendant has chosen to remain silent, a comment that creates an inference of guilt by referring to that silence "effectively penalizes the defendant for exercising a constitutional privilege." People v. Rosa, 928 P.2d 1365, 1372 (Colo.App.1996). "[R]eversible error exists only under circumstances in which the prosecutor uses the defendant's silence as a means of implying guilt." People v. Herr, 868 P.2d 1121, 1124 (Colo.App.1993).
¶ 57 The prosecutor did not use defendant's silence in this manner here. Further, the court immediately struck the singular remark and instructed the jury regarding defendant's right not to testify. The court's corrective action was adequate to remedy any prejudice. See Rosa, 928 P.2d at 1372 (court acted within its discretion to deny mistrial motion where an investigator "made only one remark about defendant's silence, and the trial court admonished the jury not to make any inference about defendant's guilt based on his refusal to speak with police"); cf. People v. Ray, 109 P.3d 996, 1002-03 (Colo. App. 2004) (any prejudice stemming from prosecutor's comment that the defendant was "running away from responsibility" did not require reversal in light of the court's instruction that a defendant is never compelled to testify, and the fact that he does not testify cannot be used as an inference of guilt or prejudice him in any way.).
E. Cumulative Effect
¶ 58 Defense counsel argued that the cumulative effect of the ex-wife's comment that defendant should explain his thinking and the boyfriend's statement that defendant "confessed" warranted a mistrial. The court denied the mistrial motion without making any specific findings.
¶ 59 We conclude that the court acted within its discretion in denying defense counsel's "cumulative effect" motion for mistrial. As noted above, any error in the premature receipt of the officer's testimony recounting *12 the ex-wife's description of the incident was harmless; and, any prejudice stemming from the boyfriend's and ex-wife's comments was merely speculative, particularly in light of the specific curative instructions given to the jury. The cumulative effect of the matters raised on appeal did not deprive defendant of a fair trial. Cf. People v. Jenkins, 83 P.3d 1122, 1130 (Colo.App.2003) (applying cumulative error doctrine); see People v. Cousins, 181 P.3d 365, 373 (Colo.App.2007) (mistrial warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means).
IV. The Use of the Term "Rape" At Trial
¶ 60 Finally, we are also not persuaded by defendant's contention that the district court erred in allowing the ex-wife, her boyfriend, and the prosecutor to use the term "rape" rather than "sexual assault" to describe defendant's conduct.
¶ 61 Before trial, defense counsel requested that there be no use of the word "rape" during trial. Counsel argued that the word was no longer a term used in Colorado's statutes and that it was "highly charged," meaning "different things to different people." The prosecutor responded that the word was (1) a "layman ['s]" term; (2) used by the ex-wife during a recorded phone conversation with defendant; and (3) used regularly by Colorado's appellate courts. The court denied defendant's request, stating that the term "rape" was "all over the case law" and was "apparently understood" by the jurors, because it was used by many of them in their juror questionnaires.
¶ 62 At trial, the ex-wife, the boyfriend, and the prosecutor used the term "rape" at various times. On appeal, defendant argues that the term "rape" should not have been used, because it (1) is no longer used in statutory law; (2) invaded the province of the jury and violated his right to be presumed innocent; and (3) was unfairly prejudicial.[3]
¶ 63 Until 1975, Colorado proscribed the crime of "rape" in varying degrees. That year, as part of the repeal and reenactment of part 4 of article 3 of title 18, the General Assembly re-denominated "rape" offenses as "sexual assaults." See Ch. 171, sec. 1, §§ 18-3-402 to-404, 1975 Colo. Sess. Laws 628-30.[4]
¶ 64 In a sexual assault case, neither a witness nor a prosecutor is barred from using the term "rape" simply because the term no longer appears in the criminal statutes. See People v. Brooks, No. 209008, 2000 WL 33538532, at *2 (Mich.Ct.App. Jan. 18, 2000) (unpublished opinion) (defendant charged with third degree sexual conduct);[5] see also Vasquez v. State, 623 P.2d 1205, 1207 (Wyo.1981) (although "the term 'rape' is no longer used in the statutes defining the degrees of sexual assault," the prosecutor's use of the term rape was "only a reference to appellant's conduct in taking his wife by force").
¶ 65 Lay witnesses may testify "in the form of opinions or inferences ... which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." CRE 701. "The witness's opinion does not invade the province of the jury because nothing can compel the jury to accept the witness's opinion over its own."
*13 People v. Acosta, 2014 COA 82, ¶ 32, 338 P.3d 472. Although a lay witness may not "testify regarding whether a particular legal standard has or has not been met," he or she may give a conclusion summarizing his or her sensory impressions based on personal observation of another's physical activity. Id. at ¶¶ 32-33.
¶ 66 In this regard, CRE 701"permits evidence which can be characterized as a 'shorthand statement of fact.' " Id. at ¶ 42 (quoting State v. Braxton, 352 N.C. 158, 531 S.E.2d 428, 445 (2000) ); see also People v. Hoskay, 87 P.3d 194, 197 (Colo.App.2003) ("Summary characterizations and impressions as to what transpired can be of significant assistance to a fact finder."). Thus, "[i]f circumstances can be presented with greater clarity by stating an opinion, then that opinion is helpful to the trier of fact.... Allowing witnesses to state their opinions instead of describing all of their observations has the further benefit of leaving witnesses free to speak in ordinary language." Virgin Islands v. Knight, 989 F.2d 619, 630 (3d Cir.1993) (citations omitted).
¶ 67 The word "rape" is a term commonly used to refer to forcible, nonconsensual sexual intercourse. See Black's Law Dictionary 1374 (9th ed. 2009) (rape is defined as "[u]lawful sexual activity (esp. intercourse) with a person (usu. a female) without consent and usu. by force or threat of injury"); American Heritage Dictionary of the English Language 140 (4th ed. 2000) (rape is "[t]he crime of forcing another person to submit to sex acts, especially sexual intercourse"); see also Commonwealth v. Sherman, 451 Mass. 332, 885 N.E.2d 122, 127 (2008) ("Rape is not merely a technical legal term but also a widely known layman's term," citing, among other authorities, Webster's New Collegiate Dictionary 949 (1980) as defining "rape" as "sexual intercourse with a woman by a man without her consent and chiefly by force or deception") (emphasis omitted); Brooks, 2000 WL 33538532 at *1 ("[R]ape is a generic term for forcible nonconsensual sexual intercourse.").
¶ 68 Consistent with CRE 701, there is no error when, as here, a witness uses the term "rape" as a "convenient shorthand term" for the act of forcible, nonconsensual intercourse; such use of the term neither invades the province of the jury nor undermines a defendant's presumption of innocence. See State v. Goss, 293 N.C. 147, 235 S.E.2d 844, 849 (1977) (noting that such use of the term "rape" does not amount to an impermissible legal conclusion); see also State v. Wonser, 217 Kan. 406, 537 P.2d 197, 199 (1975) (where the defendant was charged with "indecent liberties with a child," the court properly allowed the witnesses and attorneys to use the term "rape" repeatedly because they "were simply designating the act by its common name"); State v. Amick, No. COA8-760, 2009 WL 1056557, at *3 (N.C.Ct.App. Apr. 21, 2009) (the victim's use of the word "rape" was not an impermissible legal conclusion, but rather "a 'convenient shorthand term' to describe the victim's version of events" (quoting Goss, 235 S.E.2d at 849 )); Brooks, 2000 WL 33538532, at *2 (upholding admission of complainant's characterization of what occurred to her as a "rape" under a rule of evidence identical, in all material respects, to CRE 701 ; rejecting the defendant's argument that the use of the term undermined his presumption of innocence).
¶ 69 Nor, in our view, is the use of the word "rape" unfairly prejudicial, even where the term is not part of the sex assault statute under which a defendant is prosecuted. See Behmlander v. Warden, No. TSRCV084002150, 2011 WL 383789, at *4 (Conn.Super.Ct. Jan. 6, 2011) (unpublished opinion) (the defendant "was not prejudiced by the fact that various participants [including the victim and a nurse] used the terms 'rape' and 'sexual assault' interchangeably"), aff'd sub nom. Jason B. v. Comm'r of Corr., 141 Conn.App. 674, 62 A.3d 1144 (2013) ; People v. Moss, 205 Ill.2d 139, 275 Ill.Dec. 444, 792 N.E.2d 1217, 1228 (2001) (victim's use of the word "rape" rather than the statutory term "sexual assault" did not result in prejudice to defendant); State v. Johnson, 2 So.3d 606, 619 (La.Ct.App.2009) (use of the term "rape," in reference to the defendant's acts underlying prior conviction for carnal knowledge of a juvenile, was not prejudicial because it "was clearly an attempt by [the victim of that crime] to describe nonconsensual *14 sexual intercourse"); cf. Brooks, 2000 WL 33538532, at *2 (the defendant was not prejudiced by the prosecutor's use of the nonstatutory term "rape" because "[a]lthough prosecutors must avoid inflaming the prejudices of a jury, they need not phrase their argument in the blandest of all possible terms").
¶ 70 In line with these authorities, we perceive nothing improper about an alleged victim's use of the term "rape" to characterize a situation involving, from her perspective, forcible nonconsensual sexual intercourse.
¶ 71 Nor do we perceive any error in the ex-boyfriend's use of the term "rape" in reiterating what the victim had told him about the incident. See Crespo v. Warden, No. TSRCV074001993S, 2012 WL 6743571, at *8 (Conn.Super.Ct. Nov. 28, 2012) (unpublished opinion) (Witnesses's use of the term "rape" was "unavoidable [because they were repeating the victim's allegations] and proper because the witnesses were not rendering their personal opinions as to the particular victim in this case or the defendant."); cf. Behmlander, 2011 WL 383789, at *4 (the defendant "was not prejudiced by the fact that various participants [including the victim and a nurse] used the terms 'rape' and 'sexual assault' interchangeably").
¶ 72 Nor, for that matter, do we perceive any error in the prosecutor's use of the term. During opening statement, a prosecutor "may refer to evidence that subsequently will be adduced at trial and draw inferences from that evidence." People v. Estes, 2012 COA 41, ¶ 23, 296 P.3d 189. And, in closing argument, a prosecutor may comment on the evidence admitted at trial and the reasonable inferences that can be drawn from the evidence. People v. Welsh, 176 P.3d 781, 788 (Colo.App.2007). It is, to us, inconceivable how a prosecutor could err in referencing or commenting on the evidence in terms used by the witnesses themselves.
¶ 73 Indeed, even where, as in Colorado, sex offenses are designated in different terms, courts have upheld a prosecutor's use of the word "rape" when, as here, the evidence was of forcible, nonconsensual sexual intercourse. See Guam v. Torre, 68 F.3d 1177, 1180 (9th Cir.1995) (the prosecutor's use of the term "rape" was proper because "there is no rule of evidence or ethics that forbids the prosecutor from referring to the crime by its common name when examining a witness"); People v. Adkins, No. 309898, 2013 WL 195682, at *6 (Mich.Ct.App. Jan. 17, 2013) (unpublished opinion) (where the witness and the victim referred to conduct charged as "criminal sexual conduct" as a "rape" throughout trial, "[t]he prosecution's characterization of the assault as a rape was not inappropriate considering how the witnesses and the victim perceived and characterized the incident"); State v. Mireles, No. A03-699, 2004 WL 1244077, at *4 (Minn. Ct.App. June 8, 2004) (unpublished opinion) (concluding that there was no prosecutorial misconduct in the prosecution's use of the word "rape" to describe the offense); Vasquez, 623 P.2d at 1207 (there was no error in the prosecutor's use of the term rape because it was "only a reference to appellant's conduct in taking his wife by force").
¶ 74 Consequently, we discern no error in the trial court's allowing the ex-wife, her boyfriend, and the prosecutor to use the term "rape" in reference to the alleged incident.
V. Conclusion
¶ 75 The judgments of conviction are affirmed.
DUNN and PLANK* JJ., concur.

The ex-wife told the officer that defendant had come to her house, held her and her boyfriend at gunpoint, told the boyfriend he could leave if he did not call the police, ordered her into the bedroom at gunpoint, told her to take off her clothes, and "put his penis into her vagina." She told the officer that, afterwards, she had tried to escape by running away, naked, but was caught by defendant before she could exit the house.

Prior consistent statements are also admissible to rebut an express or implied charge of recent fabrication or improper influence or motive by or on the part of a testifying declarant. See CRE 801(d)(1)(B). See People v. Eppens, 979 P.2d 14, 19 (Colo.1999). Given the manner in which we resolve this issue, we need not decide whether the ex-wife's statements would also have been admissible under CRE 801(d)(1)(B). See id. (declining to resolve a split of authority on whether, to be admissible, the consistent statement had to have been made before the alleged fabrication or improper influence or motive arose).

Because defendant did not raise the second argument before the trial court, reversal would not be warranted with respect to it in the absence of plain error. See People v. Ujaama, 2012 COA 36, ¶ 36, 302 P.3d 296. For the reasons set forth in the text, we perceive no error, much less plain error.

Contrary to defendant's assertion, the term "rape" has not been totally removed from Colorado statutes. See §§ 17-1-115.5(e) & 192-214(1)(e), C.R.S.2014 (one purpose of the detention center sexual assault prevention program is to "[e]nsure the confidentiality of prison rape complaints and protections of juveniles who make complaints of prison rape"); see also §§ 19-5-207, 19-5-208, & 195-210, C.R.S.2014, all of which deal with adoption and prospective parents who have a conviction for "any crime involving violence, rape, sexual assault, or homicide."

Like Colorado, Michigan no longer uses the term "rape" in its criminal statutes. See Mich. Comp. Laws §§ 750.520b -e (2014) (describing criminal sexual conduct in the first through fourth degrees).

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2014.