Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 20, 2018

**2018 CO 13**

**No. 15SC3, <u>Pernell v. People</u>—Criminal Law—Harmless Error.**

The supreme court reviews the court of appeals' opinion affirming the defendant's conviction for burglary, kidnapping, sexual assault, and other offenses. The court of appeals held that although the trial court erred by admitting a victim's out-of-court statements as excited utterances under CRE 803(2), the trial court's error did not require reversal because the statements were admissible as prior consistent statements to rehabilitate the victim's credibility after defense counsel attacked it during his opening statement.

The supreme court concludes that any error in the admission of the victim's out-of-court statements was harmless because there is no reasonable possibility that the admission of these statements contributed to the defendant's conviction. Accordingly, the supreme court declines to address whether defense counsel's opening statement opened the door to the admission of the victim's out-of-court statements and expresses no opinion on this issue. The supreme court therefore affirms the judgment of the court of appeals, albeit on different grounds.

**2018 CO 13**

**Supreme Court Case No. 15SC3**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA510

**Petitioner:**

Christopher Alexander Pernell,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Affirmed**
*en banc*
February 20, 2018

**Attorneys for Petitioner:**
Berg Hill Greenleaf & Ruscitti, LLP
Sean James Lacefield
  *Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Melissa D. Allen, Senior Assistant Attorney General
  *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1     A jury convicted Defendant Christopher Pernell of several charges, including burglary, kidnapping, and sexual assault. The prosecution alleged that Pernell showed up at his ex-wife's house uninvited; forced his way into her home; threatened her and her boyfriend at gunpoint; forced her to have sexual intercourse; and prevented her from fleeing. At trial, the prosecution presented multiple witnesses, including the ex-wife, the boyfriend, and a police officer who investigated the incident, as well as corroborating physical evidence. Pernell did not testify or present evidence at trial. His theory of defense was that the ex-wife and the boyfriend fabricated the story of the incident. Consistent with this theory, defense counsel told the jury during opening statements that the incident, as described by the ex-wife and the boyfriend, "didn't happen" and that the ex-wife and the boyfriend "concoct[ed] their story to get [Pernell] out of their lives."

¶2     An officer who testified at trial recounted the ex-wife's description of the incident to him. Pernell objected to this testimony, arguing that the ex-wife's out-of-court statements to the officer constituted inadmissible hearsay. The trial court admitted these statements as excited utterances under CRE 803(2). On appeal, Pernell argued, among other things, that the trial court had reversibly erred in admitting the ex-wife's statements.

¶3     The court of appeals affirmed the judgment of conviction. People v. Pernell, 2014 COA 157, ___ P.3d ___. As relevant here, the court agreed with Pernell that the trial court erred in admitting the ex-wife's out-of-court statements as exited utterances under

CRE 803(2), but concluded that the error did not require reversal because the statements were nonetheless admissible as prior consistent statements to rehabilitate the ex-wife's credibility after Pernell had attacked it. Id. at ¶ 37. In so ruling, the court of appeals reasoned that defense counsel's opening statement that the ex-wife fabricated her story opened the door for the admission of her out-of-court statements. Id. at ¶ 40. We granted Pernell's petition for a writ of certiorari to review whether a defendant's opening statement can open the door to admit otherwise inadmissible evidence. [1]

¶4 However, upon review of the trial record, we conclude that any error in the admission of the ex-wife's out-of-court statements was harmless because there is no reasonable possibility that the admission of these statements contributed to Pernell's conviction. Accordingly, we decline to address whether defense counsel's opening statement opened the door to the admission of the ex-wife's out-of-court statements and express no opinion on this issue. We therefore affirm the judgment of the court of appeals, albeit on different grounds.

## I. Facts and Procedural History

¶5 The People charged Defendant Christopher Pernell with two counts of second degree kidnapping, one count of sexual assault, one count of first degree burglary, two counts of menacing, one count of violation of a protection order, and three

---

[1] We granted certiorari to review the following issue: "Whether, as a matter of first impression, a defendant's opening statement can 'open the door' to otherwise inadmissible evidence."

crime-of-violence sentence enhancers. The charges stemmed from an incident on the night of August 1, 2010, involving Pernell, his ex-wife, and the ex-wife's boyfriend. At the time of the incident, Pernell and the ex-wife had divorced, and Pernell was subject to a court-issued protection order prohibiting him from harassing, intimidating, threatening, or molesting the ex-wife, and requiring him to stay at least 100 yards away from her at all times.

¶6    According to the prosecution, Pernell showed up at his ex-wife's house uninvited at night. He forced his way into her home, threatened her and her boyfriend at gunpoint, forced her to have sexual intercourse after allowing the boyfriend to leave, and prevented her from fleeing. At trial, the prosecution presented several witnesses, including the ex-wife, the boyfriend, and a police officer who investigated the incident. The prosecution also introduced corroborating physical evidence.

¶7    Pernell did not testify or present any evidence at trial. Instead, his counsel argued that although Pernell went to his ex-wife's home, he did not bring a gun; that Pernell had consensual sex with his ex-wife; and that the ex-wife and the boyfriend fabricated the story of the incident. During opening statements, defense counsel stated that the incident, as described by the ex-wife and the boyfriend, "didn't happen" and that the ex-wife and the boyfriend "concoct[ed] their story to get [Pernell] out of their lives."

¶8    The prosecution's first trial witness was Officer Todd Gentry, a police officer who spoke with the ex-wife the morning after the incident and who investigated her

4

complaint against Pernell. Officer Gentry testified that when he spoke with the ex-wife, she was "visibly distraught" and "traumatized from the event that had happened 12 hours prior." When asked to explain what he meant by "distraught," Officer Gentry responded, "she was afraid, really to the point of probably being terrified. Her head was down. Her eyes were down." Officer Gentry testified that the ex-wife told him that Pernell came into her home with a gun; threatened her and the boyfriend at gunpoint; ordered her into the bedroom after allowing the boyfriend to leave; forced her to have sexual intercourse with him; and stopped her from escaping.

¶9 Pernell objected to Officer Gentry's testimony regarding the ex-wife's account of the incident, arguing that her statements to the officer were inadmissible hearsay. The trial court overruled the objection, concluding that the ex-wife's statements to Officer Gentry "just barely" qualified as excited utterances admissible pursuant to CRE 803(2) (ostensibly because the officer testified that the ex-wife appeared to be still under the stress of the incident when she made the statements twelve hours later). Defense counsel later moved for a mistrial on the ground that the ex-wife's statements to Officer Gentry were improperly admitted; the court denied this motion.

¶10 Both the ex-wife and her boyfriend testified at trial. According to their testimony, they were together inside the ex-wife's house when they heard knocking on the front door. After the ex-wife opened the front door slightly, Pernell forcefully pushed the door open, causing the ex-wife to fall backward and scream. Pernell pulled out a gun and entered the home. Once inside the home, Pernell held the gun to the

5

boyfriend's head and said, "Bang" or "Bam." Pernell then moved the gun away from the boyfriend's head, ordered the couple to sit at a table, and began questioning the boyfriend about his relationship with the ex-wife. Eventually, Pernell permitted the boyfriend to leave the house but told him not to call the police.

¶11 The ex-wife further testified that after the boyfriend left, Pernell ordered her into the bedroom at gunpoint and told her to take off her clothes. Pernell then forced her to have sexual intercourse with him, over her continued objection. When Pernell stopped, the ex-wife grabbed his gun and attempted to escape the house through the front door, but Pernell stopped her and took back the gun. Pernell ordered her back to the bedroom, forced her onto the bed, and held the gun to her head. He left only after she promised that she would not call the police. After Pernell left her house, the ex-wife went to the boyfriend's house, where she spent the night. The following morning, she reported the incident to the police and spoke with Officer Gentry, among others.

¶12 Other witness testimony supported the ex-wife and the boyfriend's account of the incident. One of the ex-wife's neighbors testified that on the night of the incident, she saw a man knock on the ex-wife's door and enter the home. Another witness testified that as she was standing at a bus stop, she observed a man carrying a bag under his arm walk up to the ex-wife's house and knock hard on the door several times. When she saw the door swing open, she saw the man "dart[] . . . in[to] the house" and heard a woman scream.

¶13     The prosecution also introduced photographs—collected by a sexual assault nurse examiner who examined the ex-wife the day after the incident—that showed bruising on the ex-wife's buttocks and other parts of her lower body.  Forensic evidence indicated that Pernell's DNA was present in the ex-wife's vaginal swab.

¶14     Additionally, the prosecution introduced a police recording and transcript of a pretext call between Pernell and the ex-wife the day after the incident.  During this phone conversation, the ex-wife told Pernell, "[Y]ou pointed a gun at me, threatened to kill me . . . [y]ou made me have sex with you.  I'm, I'm afraid."  Pernell stated, "I know, I know.  That's the reason I got rid of [the gun] and I, I promise you that my word that that is done."  Later in the conversation, the ex-wife stated, "You raped me . . . . You forced me to have sex.  You forced me to have sex with you.  And I told you I didn't want to do it.  I begged you not to do it."  Pernell responded, "Um, I, I'm sorry.  I wasn't in my right frame of mind."

¶15     As noted above, Pernell did not testify or present any evidence at trial.  His counsel argued that he had consensual intercourse with the ex-wife on the night in question and that the ex-wife and the boyfriend fabricated the story of the incident.  After presenting this theory in his opening statement, defense counsel vigorously cross-examined both the ex-wife and the boyfriend.  Counsel asked the ex-wife whether she "came up with this story" with the boyfriend and questioned her motivations for waiting to report the incident to the police until the following day and for changing into pants before going to the police station to make the report.  During closing arguments,

7

defense counsel again asserted that the ex-wife and the boyfriend had fabricated the allegations against Pernell, adding that the ex-wife had testified that she attempted to make her story more "believable" by changing from her skirt into pants before going to the police station.

¶16 The jury convicted Pernell on all counts as charged, and the trial court sentenced him to an indeterminate term of fifty-eight years to life in the custody of the Department of Corrections.

¶17 Pernell appealed the judgment of conviction, arguing, among other things, that the trial court reversibly erred by admitting Officer Gentry's testimony regarding the ex-wife's out-of-court statements. Pernell argued that the ex-wife's statements were not admissible as excited utterances under CRE 803(2).

¶18 The court of appeals affirmed the judgment of conviction. People v. Pernell, 2014 COA 157, ___ P.3d ___. Relevant here, the court agreed with Pernell that the trial court erred in admitting the ex-wife's out-of-court statements as exited utterances. Id. at ¶ 35. The court reasoned that the evidence showed that in the twelve hours that followed the incident, the ex-wife drove to her boyfriend's house, spent the night there, told him about the sexual assault, drove home the following morning, changed clothes, and drove to the police station where she made the statements at issue. Id. at ¶ 34. The court concluded that this evidence showed the ex-wife had "'several independent interludes of reflective thought' that rendered her statements less than spontaneous." Id. (quoting People v. Stephenson, 56 P.3d 1112, 1116 (Colo. App. 2001)).

8

¶19 However, the court of appeals held that reversal was not required because the statements were admissible on an alternative basis, namely, as prior consistent statements to rehabilitate the ex-wife's credibility after Pernell had attacked it. Id. at ¶ 37 (citing People v. Eppens, 979 P.2d 14, 21 (Colo. 1999) (referring to the "generally accepted non-hearsay use of prior consistent statements for rehabilitative purposes" under common law)).[2] Although the ex-wife's out-of-court statements were admitted before the ex-wife testified, the court of appeals concluded that defense counsel's accusations in his opening statement that the ex-wife fabricated her story opened the door to the admission of her out-of-court statements through Officer Gentry's testimony. Id. at ¶ 40. The court further opined that even if defense counsel's accusations during his opening statement had not opened the door, the ex-wife's statements would have been admissible after defense counsel's cross examination of the ex-wife. Id. at ¶ 41. Therefore, the court reasoned, any error in the premature admission of this evidence was harmless. Id.

¶20 Pernell's petition for certiorari review followed.

---

[2] Because the court of appeals determined the ex-wife's out-of-court statements to Officer Gentry were admissible as prior consistent statements to rehabilitate her credibility after Pernell had attacked it, it did not address whether the ex-wife's statements would have been admissible under CRE 801(d)(1)(B), which provides that a prior consistent statement by a witness subject to cross examination that is offered to rebut a charge of recent fabrication or improper influence or motive is not hearsay. See Pernell, ¶ 37 n.2.

## II. Analysis

¶21 Although we granted certiorari in this case to review whether defense counsel's opening statement opened the door to the admission of the ex-wife's out-of-court statements to Officer Gentry, we conclude that we need not decide this issue. Upon review of the trial record, we conclude that any error in the admission of the ex-wife's statements was harmless. Accordingly, we affirm the judgment of the court of appeals on different grounds and decline to reach the issue for which we granted certiorari. See People v. Saint-Veltri, 945 P.2d 1339, 1342 (Colo. 1997) (declining to reach the issue for which certiorari was granted because "that issue poses a hypothetical question whose answer would not necessarily decide the case").

### A. Standard of Review

¶22 Because Pernell timely objected to the admission of Officer Gentry's testimony recounting the ex-wife's out-of-court statements, any error that occurred in the admission of this evidence is subject to non-constitutional harmless error review. See Nicholls v. People, 2017 CO 71, ¶ 17, 396 P.3d 675, 679; Yusem v. People, 210 P.3d 458, 469 (Colo. 2009). Under this standard, "an erroneous evidentiary ruling does not require reversal unless the ruling affects the accused's substantial rights." Nicholls, ¶ 17, 396 P.3d at 679. A reviewing court's "determination [of] whether a trial error has affected a substantial right of a defendant can only result from a case specific assessment of the likely impact of the error in question on the outcome of the litigation as a whole," People v. Rock, 2017 CO 84, ¶ 22, 402 P.3d 472, 479, and an objected-to trial

10

error is harmless if there is no reasonable possibility that it contributed to the defendant's conviction, People v. Roman, 2017 CO 70, ¶ 13, 398 P.3d 134, 138; see also People v. Gaffney, 769 P.2d 1081, 1088 (Colo. 1989) (an error may be deemed harmless "[i]f a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial").

## B. Application

¶23   Pernell contends that the court of appeals erred in holding that defense counsel's opening statement opened the door for the admission of the ex-wife's out-of-court statements because, he argues, opening statements are not evidence and cannot open the door to the admission of otherwise inadmissible hearsay. Pernell argues that because the ex-wife's statements did not qualify as excited utterances under CRE 803(2), and because they were inadmissible to rehabilitate the ex-wife's credibility, the trial court erred in admitting them. Further, Pernell argues, the erroneous admission of her statements under these circumstances was not harmless because the ex-wife's credibility was "essential" to the prosecution's case, and the prosecution offered the statements as "substantive evidence to unfairly bolster [the ex-wife's] credibility."

¶24   We need not address whether opening statements may open the door to otherwise inadmissible evidence because, based on our review of the trial record, we conclude that any error in the admission of this testimony was harmless.

¶25 We have never reduced the question of a trial error's prejudicial impact to a specific set of factors. See Crider v. People, 186 P.3d 39, 43 (Colo. 2008). That said, we have indicated that the strength of the properly admitted evidence supporting the guilty verdict is clearly an "important consideration" in the harmless error analysis. Id. Similarly, we have held evidentiary error to be harmless where the properly admitted evidence overwhelmingly shows guilt. See, e.g., People v. Summitt, 132 P.3d 320, 327–28 (Colo. 2006) (holding that the trial court's evidentiary error was harmless in light of "the overwhelming proof in the record that [the defendant] committed the crimes for which the jury convicted him"); Tevlin v. People, 715 P.2d 338, 342 (Colo. 1986) (holding that the trial court's error in admitting certain expert testimony was harmless given "the overwhelming evidence of guilt produced in this case").

¶26 Here, the record contains overwhelming, properly admitted evidence of Pernell's guilt. The ex-wife's account of the events was corroborated both by physical evidence and by the testimony of several witnesses, including the boyfriend, who directly observed much of the incident. Moreover, Pernell's own statements during his phone conversation with the ex-wife the day after the incident strongly support the ex-wife's allegations. At least twice during this conversation, Pernell appeared to admit to the ex-wife's version of the incident. In response to the ex-wife's statement that she was afraid because he "pointed a gun at [her,] threatened to kill [her, and] made [her] have sex with [him]," Pernell said, "I know, I know." When the ex-wife later stated unequivocally to Pernell, "You raped me . . . . You forced me to have sex. You forced

12

me to have sex with you. And I told you I didn't want to do it. I begged you not to do it," Pernell did not deny the statements but instead responded, "Um, I, I'm sorry. I wasn't in my right frame of mind."

¶27    We are unpersuaded by Pernell's contention that the alleged error here was not harmless because the ex-wife's credibility was "essential" to the prosecution's case. We previously have held that improper bolstering evidence was not harmless where the victim's credibility was the "focal issue" of a case. See, e.g., People v. Snook, 745 P.2d 647, 649 (Colo. 1987) (error in admitting expert testimony directly supporting the victim's credibility was not harmless where the victim's credibility was the "focal issue in the case"). But it is clear from the trial record that the ex-wife's credibility was not the focal issue here. In addition to the ex-wife's testimony, the prosecution's case depended on the ex-boyfriend's testimony, corroborating testimony from other witnesses, physical evidence, and, perhaps most significantly, Pernell's own statements during his phone conversation with the ex-wife—which the prosecution referenced repeatedly in its closing statement.

¶28    Finally, we note that defense counsel cross-examined Pernell's ex-wife at length. This cross-examination spanned over 100 transcript pages, during which defense counsel questioned her vigorously and extensively regarding her account of the incident and her motivations to fabricate the story. Under these circumstances, we conclude there is no reasonable possibility that the admission of the ex-wife's

13

out-of-court statements compromised the jury's ability to independently evaluate the ex-wife's credibility.

### III.  Conclusion

¶29    Based on the trial record, we conclude that, even if the trial court erroneously admitted the ex-wife's out-of-court statements, there is no reasonable possibility that this alleged error contributed to Pernell's conviction.  We therefore hold that any such error was harmless.  We decline to address whether defense counsel's opening statement opened the door to the admission of the ex-wife's out-of-court statements and express no opinion on this issue.  Accordingly, we affirm the judgment of the court of appeals on different grounds.