23CA1571 Peo v Garcia 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1571
Jefferson County District Court No. 22CR2923
Honorable Christopher B. Rhamey, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Gemini Elijah Garcia,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LIPINSKY
Welling and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Gemini Elijah Garcia appeals his convictions for second degree murder (felony murder) and five counts of aggravated robbery, as well as two crime of violence sentence enhancers attendant to the aggravated robbery convictions. We reverse his convictions and remand for a new trial.

## I.    Background

¶ 2     The jury could have reasonably found the following facts from the evidence introduced at trial. Jessie Vargas-Vigil arranged to buy marijuana from the victim in the parking lot outside Vargas-Vigil's apartment building. On October 12, 2022, Garcia met Vargas-Vigil and Vargas-Vigil's brother at Vargas-Vigil's apartment. Vargas-Vigil and Garcia — who was carrying an empty bag — left the apartment, walked to the parking lot, and approached the victim, who was seated in a truck.

¶ 3     Although the evidence conflicted, Garcia and the People agree that Vargas-Vigil entered the passenger side of the truck while Garcia stood outside the driver's side door. A gunshot was fired. After Vargas-Vigil, who appeared to be holding a gun, took items from the victim, he and Garcia ran from the truck. While running, Vargas-Vigil dropped a clear plastic bag containing a "green leafy

1

substance." He yelled to Garcia to pick it up. Garcia did so, and the two men ran into Vargas-Vigil's apartment. They left the apartment with Vargas-Vigil's brother, who drove off with them. No direct evidence established that Garcia was armed on the day of the robbery. No witness testified, and no photo showed, that Garcia possessed a gun that day.

¶ 4     The victim was taken to a hospital, where he was pronounced dead. The cause of death was determined to be a gunshot to the head. Six days later, police officers arrested Garcia during an unrelated traffic stop. Police searched Garcia incident to the arrest and found a gun and ammunition in his possession.

¶ 5     Garcia was charged with one count of second degree murder (felony murder) (count 1) and five counts of aggravated robbery (counts 2 through 6). At trial, he denied that he had robbed the victim and presented a disengagement affirmative defense to the felony murder charge.

¶ 6     The jury convicted him of all counts. The trial court merged the aggravated robbery counts into the felony murder count, characterizing the former counts as "predicate offenses to [felony murder], and lesser included offenses." *See* § 18-1-408, C.R.S.

2025.  The trial court applied two sentence enhancers, *see* § 18-1.3-406(2)(a)(I)(A)-(B), C.R.S. 2025, and sentenced Garcia to forty-four years in the custody of the Department of Corrections.

¶ 7     On appeal, Garcia contends that there was insufficient evidence to convict him of the charged offenses; the trial court abused its discretion by admitting propensity evidence establishing that, because Garcia had guns before and after the robbery, he was more likely to have been armed during the robbery; and the trial court abused its discretion and violated Garcia's right to present a defense by rejecting his theory of defense instruction.  He also argues that the cumulative effect of the alleged errors deprived him of a fair trial.

¶ 8     We disagree with Garcia's first and third contentions, but we agree that the trial court abused its discretion by admitting the propensity evidence and reverse and remand on that ground.  Because we conclude that reversal is warranted because of the trial court's evidentiary error, we decline to address Garcia's cumulative error argument.

## II.    Analysis

### A.    Sufficiency of the Evidence

¶ 9    Garcia contends there was insufficient evidence to support his convictions for aggravated robbery and felony murder. We must address this argument regardless of our resolution of Garcia's other contentions because double jeopardy principles prohibit the retrial of a defendant when "an appellate court reverses a conviction solely for lack of sufficient evidence to sustain the jury's verdict." *McDonald v. People*, 2021 CO 64, ¶ 62, 494 P.3d 1123, 1134 (quoting *People v. Brassfield*, 652 P.2d 588, 594 n.5 (Colo. 1982)).

¶ 10    We conclude that the evidence was sufficient to support the convictions.

### 1.    Standard of Review

¶ 11    "[W]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions." *People v. Gray*, 2025 COA 23, ¶ 21, 568 P.3d 448, 452 (quoting *People v. Harrison*, 2020 CO 57, ¶ 31, 465 P.3d 16, 23). To sustain a conviction, we consider whether the relevant evidence, "when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support

a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Johnson v. People*, 2023 CO 7, ¶ 13, 524 P.3d 36, 40 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)). "In assessing the sufficiency of the evidence, we must consider all the evidence admitted at trial, including . . . erroneously admitted evidence . . . ." *People v. Hard*, 2014 COA 132, ¶ 39, 342 P.3d 572, 579. "While we 'give the prosecution the benefit of all reasonable inferences that might fairly be drawn from the evidence,' there must be a 'logical and convincing connection between the facts established and the conclusion inferred.'" *People v. Martinez*, 2024 COA 34, ¶ 46, 552 P.3d 551, 560 (quoting *People v. Donald*, 2020 CO 24, ¶ 19, 461 P.3d 4, 7).

## 2. Aggravated Robbery

¶ 12 Garcia contends that the evidence was insufficient to sustain his conviction for aggravated robbery under either a principal or a complicity theory because the prosecution failed to prove that he was armed with a deadly weapon; knowingly took anything of value from the victim; used threats, force, or intimidation to do so; or aided or abetted Vargas-Vigil.

## a. Substantive Law

¶ 13      To convict Garcia of aggravated robbery under section 18-4-302(1)(a)-(c), C.R.S. 2025, the prosecution was required to prove all the elements of simple robbery, plus the additional elements noted below, or that Garcia was complicit in Vargas-Vigil's commission of an aggravated robbery. *See People v. Buell*, 2017 COA 148, ¶ 21, 442 P.3d 961, 966, *aff'd*, 2019 CO 27, 439 P.3d 857.

¶ 14      A person commits simple robbery if the person "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18-4-301(1), C.R.S. 2025.  A person who commits robbery is guilty of aggravated robbery if, as relevant here, "during the act of robbery or immediate flight therefrom," the person:

(a)      "is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed";

(b)      "by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed . . . in reasonable fear of death or bodily injury"; or

(c) "has present a confederate, aiding or abetting the perpetration of the robbery, armed with a deadly weapon, with the intent, either on the part of the defendant or confederate, if resistance is offered, to kill, maim, or wound the person robbed," or by the use of force, "puts the person robbed . . . in reasonable fear of death or bodily injury."

§ 18-4-302(1)(a)-(c).

¶ 15 Under a complicity theory of liability, "[a] person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, [the person] aids, abets, advises, or encourages the other person in planning or committing the offense." § 18-1-603, C.R.S. 2025.

¶ 16 The jury was instructed on a complicity theory of liability for all five of Garcia's aggravated robbery counts and on a principal theory of liability for three of those counts.

## b. The Evidence Was Sufficient to Support Garcia's Conviction for Aggravated Robbery

¶ 17 We first address the sufficiency of the evidence supporting Garcia's convictions as a complicitor and then examine the evidence supporting his convictions as a principal.

### i. Complicity Liability

¶ 18 To convict Garcia under a complicity theory, the prosecution needed to prove that Vargas-Vigil committed each specified form of aggravated robbery and that, for each aggravated robbery charge, Garcia, "with the intent to promote or facilitate" Vargas-Vigil's commission of the aggravated robbery, "aid[ed], abet[ted], advise[d], or encourage[d]" Vargas-Vigil "in planning or committing the offense." *Id.*

¶ 19 As the supreme court has explained, complicity has a dual mental state requirement. Thus, for each aggravated robbery charge, the prosecution also needed to prove that Garcia had "(1) the intent, in the commonly understood sense of desiring or having a purpose or design, to aid, abet, advise, or encourage [Vargas-Vigil] in his criminal act or conduct, and (2) an awareness of those circumstances attending the act or conduct [Garcia sought]

to further that are necessary for" commission of the charged aggravated robbery. *People v. Childress*, 2015 CO 65M, ¶ 29, 363 P.3d 155, 164. The court clarified that "circumstances attending the act or conduct" means "those elements of the offense describing the prohibited act itself and the circumstances surrounding its commission, including a required mental state, if any; as distinguished from any element requiring that such act have a particular effect, or cause a particular result." *Id.* "With regard to causing a particular result that is an element of the offense in question, rather than mandating that a complicitor himself act with the kind of culpability otherwise required for commission of the offense," for complicitor liability to attach, "the complicitor [must] act with an awareness the principal is or would be acting with that required mental state." *Id.*

¶ 20     Under the prosecution's complicity theory of liability, and consistent with the jury instructions, the prosecution needed to introduce sufficient evidence to prove that the following occurred during the robbery or in the immediate flight therefrom:

- For count 2, Vargas-Vigil had a confederate present — Garcia — who was aiding or abetting the perpetration of

the aggravated robbery, and who was armed with a deadly weapon, and either Garcia or Vargas-Vigil intended, by the use of force, threats, or intimidation, to put the victim in reasonable fear of death or bodily injury. *See* § 18-4-302(1)(c).

- For count 3, Vargas-Vigil had a confederate present — Garcia — who was aiding or abetting the perpetration of the aggravated robbery, and who was armed with a deadly weapon, and either Garcia or Vargas-Vigil intended, if the victim offered resistance, to kill, maim, or wound him. *See id.*

- For count 4, Vargas-Vigil knowingly, by the use of force, threats, or intimidation, with a deadly weapon, put the victim in reasonable fear of death or bodily injury. *See* § 18-4-302(1)(b).

- For count 5, Vargas-Vigil knowingly wounded or struck the victim with a deadly weapon. *See id.*

- For count 6, Vargas-Vigil was armed with a deadly weapon with the intent, if resisted, to kill, maim, or wound the victim. *See* § 18-4-302(1)(a).

¶ 21 Garcia did not dispute that he was present at the scene or that Vargas-Vigil shot the victim. Although Garcia argued that he believed he and Vargas-Vigil would merely be engaging in a "routine marijuana buy," the evidence showed that immediately before the robbery Garcia and Vargas-Vigil were together in Vargas-Vigil's apartment; they spoke to Vargas-Vigil's brother about "having to do something real quick"; and, significantly, Garcia was present when Vargas-Vigil moved a handgun from under a couch pillow to his waist. Moreover, Garcia accompanied Vargas-Vigil to the victim's truck, stood outside the driver's side door — potentially blocking the victim's escape — while the victim sat in the truck with Vargas-Vigil, fled the scene with Vargas-Vigil, and picked up a stolen item that Vargas-Vigil had dropped. Furthermore, the prosecution introduced evidence that Garcia possessed a firearm in the weeks before and days after the offense, *see infra* Part II.B. *See Hard*, ¶ 39, 342 P.3d at 579.

¶ 22 Thus, viewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all reasonable inferences that can be drawn from the evidence, the evidence was substantial and sufficient to support a conclusion by a reasonable

mind that Garcia was guilty, beyond a reasonable doubt, of the five counts of aggravated robbery as a complicitor. *See Johnson*, ¶ 13, 524 at 40; *Martinez*, ¶ 46, 552 P.3d at 560.

### ii. Principal Liability

¶ 23    The trial court also instructed the jury on a principal theory of liability for counts 2, 3, and 6. Although not necessary to reject Garcia's sufficiency of the evidence challenge, in an abundance of caution, we will also review whether the evidence was sufficient to sustain Garcia's aggravated robbery convictions as a principal.

¶ 24    To convict Garcia as a principal on these counts, the prosecution needed to prove that Garcia committed each element of aggravated robbery. As discussed *supra* Part II.A.2.b.i., the evidence supported the jury's findings that Garcia knowingly took items from the victim because he picked up the dropped bag while running away from the truck and, as one witness testified, both Vargas-Vigil and Garcia appeared to "collect[] things" from inside the truck. Additionally, the jury could have reasonably found that Garcia used force, threats, or intimidation through the evidence that Garcia was armed and potentially blocked the victim from leaving the truck.

¶ 25    In addition, the prosecution introduced sufficient evidence to prove the unique elements of each principal liability count:

- For count 2, Garcia had a confederate present — Vargas-Vigil — who was armed with a deadly weapon, and either Vargas-Vigil or Garcia intended, by the use of force, threats, or intimidation, to put the victim in reasonable fear of death or bodily injury.  *See* § 18-4-302(1)(c).

- For count 3, Garcia had a confederate present — Vargas-Vigil — who was armed with a deadly weapon, and either Vargas-Vigil or Garcia intended, if resistance was offered, to kill, maim, or wound the victim.  *See id.*

- For count 6, Garcia was armed with a deadly weapon with the intent, if resisted, to kill, maim, or wound the victim.  *See* § 18-4-302(1)(a).

¶ 26    For counts 2 and 3, as discussed *supra* Part II.A.2.b.i., Garcia does not dispute that he and Vargas-Vigil were present at the scene or that Vargas-Vigil was armed.  The evidence was therefore sufficient to establish that both Vargas-Vigil and Garcia intended to put the victim in fear for his life or kill, maim, or wound him.  *See*

§ 18-4-302(1)(c).  For these reasons, the evidence was also sufficient to sustain Garcia's conviction as a principal for count 6.  *See* § 18-4-302(1)(a).

### 3.    Felony Murder

#### a.    Substantive Law

¶ 27    We next turn to the evidence supporting Garcia's felony murder conviction.  The trial court instructed the jury that simple robbery was the predicate felony supporting the felony murder count.  *See* § 18-3-103(1)(b), C.R.S. 2025.  Accordingly, to convict Garcia of felony murder, the prosecution bore the burden of proving that Garcia committed or attempted to commit simple robbery (either as a principal or a complicitor), and "in the course of or in furtherance of" the robbery or during "immediate flight therefrom," any participant caused "the death of a person, other than one of the participants."  *Id.*

#### b.    The Evidence Was Sufficient to Sustain Garcia's Felony Murder Conviction

¶ 28    Garcia contends that the prosecution failed to present sufficient evidence to prove that he committed the predicate felony of robbery.  As noted, however, *supra* Part II.A.2.b, the evidence was

sufficient to convict Garcia of aggravated robbery and, therefore, also the lesser included offense of simple robbery. (As also noted above, Garcia does not dispute that Vargas-Vigil caused the victim's death.)

### c. The Evidence Was Sufficient to Disprove Garcia's Affirmative Defense of Disengagement

¶ 29 Next, Garcia contends that the prosecution failed to disprove his disengagement affirmative defense to felony murder. Disengagement is an affirmative defense when the defendant

(1) was not the only participant in the underlying crime;

(2) did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid in the commission thereof;

(3) was not armed with a deadly weapon; and

(4) did not engage in or intend to engage in and had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious bodily injury.

§ 18-3-103(1.5).

15

¶ 30    The prosecution was required to disprove Garcia's disengagement affirmative defense, as well as prove the elements of felony murder, beyond a reasonable doubt. § 18-1-407, C.R.S. 2025. The prosecution could defeat the affirmative defense by disproving any one of its elements. *See People v. Gallegos*, 2025 CO 41M, ¶ 15, 572 P.3d 136, 141 ("Prosecutors can overcome an affirmative defense by disproving at least one of its conditions beyond a reasonable doubt.").

¶ 31    There is no dispute that the first element of disengagement is satisfied because both Garcia and Vargas-Vigil participated in the robbery. Thus, we focus on whether the prosecution "presented sufficient evidence to disprove" either the second, third, or fourth element of the affirmative defense. *Harrison*, ¶ 30, 465 P.3d at 23.

¶ 32    Turning to the second element of disengagement, the People contend that Garcia "took numerous steps to aid in [the robbery's] commission" even if he did not commit the "homicidal act." To support this assertion, the People point to the evidence showing that Garcia had advance knowledge that Vargas-Vigil would bring a gun to the meeting with the victim; Garcia stood "outside the driver's side door, which would prevent any attempt by [the victim]

16

to escape"; and he brought an empty bag to the meeting. Garcia contends that he believed he and Vargas-Vigil would merely be engaging in a "routine marijuana buy." In addition, he disputes that he tried to block the victim from escaping from the truck, noting that his position outside the driver's side door meant he was "in the line of fire" when Vargas-Vigil shot the victim.

¶ 33 But it is not our role to weigh the prosecution's evidence in a sufficiency challenge, *see Gray*, ¶ 32, 568 P.3d at 453; instead, we must view the evidence in the light most favorable to the prosecution, *see Johnson*, ¶ 13, 524 P.3d at 40.

¶ 34 We conclude that a reasonable jury could have disbelieved Garcia's argument that he did not know of Vargas-Vigil's intent to harm the victim because Vargas-Vigil brought a gun to a "routine" transaction and Garcia placed himself in a position where he could block the victim from escaping and, thereby, aided Vargas-Vigil in causing the victim's death.

¶ 35 For these reasons, we hold that the prosecution presented sufficient evidence to disprove Garcia's affirmative defense of disengagement beyond a reasonable doubt.

¶ 36    Having concluded that the evidence was sufficient to sustain Garcia's convictions, we now turn to his assertions of trial error that he asserts necessitate a new trial.

## B.    The Other Act Evidence

¶ 37    Garcia contends that the trial court abused its discretion by admitting evidence showing that he handled weapons before and after the robbery (the other act evidence).  The trial court allowed the jury to view Facebook photos showing Garcia holding a gun on June 6, 2022, and September 24, 2022; Garcia's statement in a September 27, 2022, Facebook message that he wanted to buy a gun (collectively, the social media evidence); and evidence that Garcia possessed a gun when he was arrested for a different offense six days after the robbery (the arrest evidence).

¶ 38    We agree with Garcia that the trial court abused its discretion by admitting this other act evidence.

## 1.    Standard of Review

¶ 39    "We review a trial court's evidentiary rulings for an abuse of discretion."  *People v. Cross*, 2023 COA 24, ¶ 9, 531 P.3d 444, 447 (quoting *Rojas v. People*, 2022 CO 8, ¶ 16, 504 P.3d 296, 302).  "A trial court abuses its discretion if it misconstrues or misapplies the

law or otherwise reaches a manifestly arbitrary, unreasonable, or unfair result." *People v. Johnson*, 2019 COA 159, ¶ 10, 487 P.3d 1166, 1171, *aff'd*, 2021 CO 35, 486 P.3d 1154.

¶ 40    When a defendant timely objects to the admission of evidence, as here, "any error that occurred in the admission of this evidence is subject to non-constitutional harmless error review." *Pernell v. People*, 2018 CO 13, ¶ 22, 411 P.3d 669, 673.  Under this standard, "an objected-to trial error is harmless if there is no reasonable possibility that it contributed to the defendant's conviction." *Id.*

### 2.    Applicable Law

¶ 41    "Unless otherwise provided by constitution, statute or rule, all relevant evidence is admissible." *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990); CRE 402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.  Evidence of a person's habit or routine practice is relevant to "prove that the conduct of the person . . . on a particular occasion was in conformity with the habit or routine practice." CRE 406.

¶ 42    But relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." CRE 403.

¶ 43    In addition, CRE 404(b)(1) bars the admission of "evidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." This evidence may nonetheless be admitted for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." CRE 404(b)(2).

¶ 44    If the court determines that the defendant committed the other acts, the court must then "determine if the evidence is intrinsic or extrinsic to the charged offense." *Rojas*, ¶ 52, 504 P.3d at 309; *Cross*, ¶ 14, 531 P.3d at 448. "Intrinsic acts are those (1) that directly prove the charged offense or (2) that occurred contemporaneously with the charged offense and facilitated the commission of it." *Rojas*, ¶ 52, 504 P.3d at 309. Intrinsic evidence is not subject to a CRE 404(b) analysis because it does not concern

other crimes, wrongs, or acts. *Id.* Accordingly, courts evaluate the admissibility of intrinsic evidence under CRE 401 to 403. *Id.*

¶ 45    In contrast, extrinsic evidence is evidence of other crimes, wrongs, or acts that does not directly prove the charged offense. *See id.* If extrinsic evidence "suggests bad character (and thus a propensity to commit the charged offense), it is admissible only as provided by Rule 404(b) and after a *Spoto* analysis." *Id.*

¶ 46    Other act evidence is admissible under *Spoto* only if it "(1) relates to a material fact; (2) is logically relevant; (3) has a logical relevance independent of the prohibited intermediate inference that the defendant has a bad character; and (4) does not result in unfair prejudice to the defendant that substantially outweighs the probative value of the evidence." *Cross,* ¶ 14, 531 P.3d at 448.

### 3.    The Social Media Evidence

#### a.    Additional Facts

¶ 47    The prosecution filed a pretrial notice of its intent to introduce into evidence "[s]ocial media records showing the defendant's gun possession between May – October 2022." The prosecution said it

intended to introduce the following evidence, among other evidence from Facebook:

- Two photos depicting Garcia with a gun on June 6, 2022.

- A similar photo from September 24, 2022.

- A photo of a handgun and a corresponding message from September 27, 2022, in which Garcia said, "I'll buy rn," meaning he would purchase the gun "right now." The handgun depicted in the September 27 photo is not the same weapon shown in the earlier photos.

¶ 48    The prosecution argued that the social media evidence established that Garcia "regularly carried a firearm between May – October 2022"; was "admissible pursuant to CRE 406, as his habit of carrying a firearm"; and was "relevant to prove that his conduct on the day of the homicide was in conformity with that habit." The prosecution further asserted that, even if the social media evidence was not admissible habit evidence under CRE 406, it was nonetheless admissible intrinsic evidence showing that Garcia "regularly carried a firearm" and that "directly prove[d] each of the charged counts."

22

¶ 49     In the alternative, the prosecution argued that, even if the social media evidence was extrinsic, it was admissible under CRE 404(b) because it related to a material fact — whether Garcia "possessed a firearm during the crime" — and that Garcia's "habit" of carrying a firearm was "relevant as to whether he acted in conformity with that habit" at the time of the robbery. The prosecution asserted that the social media evidence did not suggest Garcia had a "bad character" for two reasons — possession of a firearm is not unlawful, and the evidence's probative value substantially outweighed the danger of unfair prejudice because "carrying a firearm does not inherently infer a negative character trait."

¶ 50     The trial court rejected the prosecution's argument that the social media evidence was admissible habit evidence under CRE 406 and ruled it was extrinsic evidence because the prosecution had not shown that the "guns pictured or used or discussed" were "the murder weapon" or "part of the crimes charged here." (Despite the trial court's reference to a "murder weapon," the prosecution did not suggest that Garcia shot the victim.) The court said that the social media evidence "does show [Garcia] apparently

23

likes guns . . . and thus there's some danger of propensity, under 404(b)," that "require[d] a 404(b) analysis."

¶ 51 After conducting a *Spoto* analysis, the trial court concluded that the September 24 gun photo was admissible for four reasons:

(1)   It was relevant to Garcia's disengagement affirmative defense.

(2)   It had some tendency to make it more or less probable that Garcia was armed on the day of the robbery, eighteen days later.

(3)   The photo's relevance was independent of the improper inference of bad character because of its temporal proximity to the robbery.

(4)   Although there was "some danger of prejudice," the photo "relate[d] to a fact of consequence"; a "long chain of inferences" was unnecessary to understand the photo's relevance; there were few alternative means to establish that Garcia was armed on the day of the robbery; and other evidence established that Vargas-Vigil, and not Garcia, possessed a gun at the time of the robbery.

¶ 52    Following this reasoning, the trial court concluded that the September 27 photo and message were also admissible. The court noted their "close[ness] in time" to the robbery and said that, although the September 27 message — in which Garcia indicated his desire to purchase a gun — could give rise to an inference that he "perhaps broke the law" for unspecified reasons by buying a gun, under the third *Spoto* factor, the message's relevance could be separated from an improper inference of bad character. Applying the fourth *Spoto* factor, the trial court found that, although there was "danger of prejudice" if Garcia's statement about buying a gun was admitted, the danger of unfair prejudice did not outweigh the evidence's probative value because of its closeness in time to the robbery, and the evidence was minimally prejudicial because its weight "really point[ed] to [Vargas-Vigil] having a gun, not [Garcia] having a gun."

¶ 53    The trial court found that the June 6 photo was also admissible under *Spoto*. Although the court noted the June 6 photo was "more remote in time" than the September photos and message, it reasoned that the photo showed that Garcia "appear[ed] to feel comfortable" with guns and had "some tendency" to make it

more probable that Garcia "was armed on the date of the offense." Although the trial court said it "suppose[d]" the June 6 photo created an inference that Garcia had a bad character, it determined that "the jury should be able to separate any [inference] of bad conduct" from the photo's relevance.

¶ 54 As with the September photos and message, the trial court said it would admit the June 6 photo into evidence "subject to a limiting instruction that the jury may only consider it as it relates to whether the defendant was armed on the date of the offense."

### b. The Trial Court Abused Its Discretion by Admitting the Social Media Evidence

¶ 55 The trial court supported its conclusion that the September 24 and 27 social media evidence was logically relevant and independent of Garcia's bad character by finding that the photos and message were "close in time" to the robbery. Yet the trial court acknowledged that no evidence linked the guns depicted in the photos to any weapon used during the robbery. The trial court further admitted the June 6 photo into evidence, even though it was "remote in time" to the robbery, because Garcia's apparent "comfort[]" with a gun had "some tendency" to make it more

26

probable that Garcia "was armed on the date of the offense." We agree with Garcia that the court abused its discretion by admitting the social media evidence because it is inadmissible under the third *Spoto* factor.

¶ 56 In *Yusem v. People*, the supreme court concluded that evidence of the defendant's prior gun possession was inadmissible under *Spoto*'s third factor because such evidence "lack[ed] . . . similarity" to the charged offense and the prior act did not "demonstrate[] a specific tendency" to "use a gun in a particular manner." 210 P.3d 458, 467 (Colo. 2009).

¶ 57 Similarly, the June 6 and September 24 photos do not support any "specific tendency" other than that Garcia posed with guns before the robbery. *Id.* at 466-67. The trial court found that the June 6 photo was admissible based on the prosecution's propensity argument — that Garcia was the type of person who "appear[ed]" comfortable with guns, always had a gun in his possession, and, thus, was more likely to commit an aggravated robbery. Although the September 27 photo and message show Garcia's interest in purchasing a gun, as Garcia points out, no evidence showed that he ever purchased the gun, nor was he arrested with the gun depicted

27

in the photo. Nevertheless, the court ruled that the evidence was admissible to establish that Garcia "bought that gun" and said that "the jury could find [Garcia bought the gun] illegally." But Garcia's interest in purchasing a gun does not show that he had any "specific tendency" other than what he said in the message — he had an interest in guns and an opportunity to buy one. *Yusem,* 210 P.3d at 467. Moreover, the trial court acknowledged that all the gun photos and messages presented the "danger of propensity" — that their admission into evidence could result in Garcia's conviction for aggravated robbery based on an improper inference that he has a bad character.

¶ 58 The trial court's concerns were well founded. Even giving the social media evidence its maximum probative value, photos merely showing Garcia with guns or demonstrating his interest in purchasing a gun have minimal probative value when compared to the risk that, after viewing the evidence, the jury would convict Garcia because of a perceived bad character. *See Kaufman v. People*, 202 P.3d 542, 555 (Colo. 2009) (determining that evidence of lawful possession of weapons not used in the commission of the subject crime fails the third *Spoto* factor); *see also People v. Archer,*

99 Cal. Rptr. 2d 230, 238 (Ct. App. 2000) ("Evidence of possession of a weapon not used in the crime charged against a defendant leads logically only to an inference that [the] defendant is the kind of person who surrounds himself with deadly weapons — a fact of *no relevant* consequence to determination of the guilt or innocence of the defendant." (emphasis added) (quoting *People v. Henderson*, 129 Cal. Rptr. 844, 851 (Ct. App. 1976))).

¶ 59    For these reasons, we conclude that any logical relevance of the social media evidence was not independent of an improper propensity inference and that the risk of unfair prejudice outweighed the evidence's probative value, if any.  Thus, the trial court abused its discretion by admitting the social media evidence.

### 4.    The Arrest Evidence

#### a.    Additional Facts

¶ 60    In addition to allowing the social media evidence, the trial court said it would admit evidence of the "[c]ircumstances of [Garcia]'s arrest related to this case."  The prosecution sought to introduce evidence showing that, as relevant here, when officers searched Garcia incident to his arrest, they found "a tan Glock 19X concealed inside of his shorts pocket, loaded with [seventeen] live

rounds and one in the chamber, and an additional live round in his pocket."

¶ 61    The prosecution argued that the arrest evidence established that he "regularly carried a firearm between May – October 2022." Further, the prosecution asserted that the arrest evidence was intrinsic and was either admissible under CRE 406 to establish that Garcia "was in possession of a firearm in close time to the charged offense" or under CRE 404(b) for the same reasons that the social media evidence was admissible.

¶ 62    The trial court concluded that the arrest evidence was intrinsic because the gun found at the time of Garcia's arrest was "direct evidence to overcome" his disengagement affirmative defense.  Even though the trial court said the arrest evidence was intrinsic, it nonetheless conducted a *Spoto* analysis and concluded that the arrest evidence was admissible under CRE 404(b).  The trial court found that the arrest evidence related to a material fact — Garcia's possession of a firearm during the robbery; was logically relevant; and rebutted his disengagement affirmative defense.  (The record does not indicate whether the trial court also analyzed the arrest evidence under the third and fourth *Spoto* factors.)

### b. The Arrest Evidence Was Not Intrinsic

¶ 63 We disagree with the trial court that the arrest evidence was intrinsic.

¶ 64 First, it was not direct evidence that could prove the aggravated robbery counts or disprove the disengagement defense. Unlike in *Rojas*, where the supreme court concluded that a revolver seized from the defendant during his arrest one week after the charged crime "was 'intrinsic, direct evidence' that he used the same revolver during the attempted robbery," no direct evidence showed that Garcia was armed with a deadly weapon at the time of the robbery. *Rojas*, ¶ 50, 504 P.3d at 309 (quoting *United States v. Shea*, 159 F.3d 37, 39 (1st Cir. 1998)); *see also People v. Samuels*, 228 P.3d 229, 244-45 (Colo. App. 2009) (concluding that testimony that the defendant "always" carried the type of gun used in the commission of the charged offense "circumstantially linked" the defendant to the crime and was direct evidence supporting the defendant's conviction of possession of a weapon by a previous offender).

¶ 65 Like the social media evidence, which the trial court correctly determined was extrinsic because no evidence tied the guns shown

in the photos to the robbery, there was no evidence that, at the time of the robbery, Garcia possessed the gun that the police seized when he was arrested. And because none of the guns depicted in the Facebook photos were the weapon that Garcia possessed when arrested, the arrest evidence could not establish that he continuously possessed a specific gun from June 6 — or September 24 or 27 — through the date of his arrest. Thus, unlike the gun discussed in *Rojas*, the gun found in Garcia's possession at the time of his arrest did not directly establish that he was armed with a deadly weapon during the robbery. *See Rojas*, ¶¶ 49-50, 504 P.3d at 309.

¶ 66 Second, we do not agree with the trial court's determination that evidence obtained during Garcia's arrest for a different offense *six days after the robbery* can be deemed "contemporaneous[] with the charged offense." *Id.* at ¶ 52, 504 P.3d at 309; *see also State v. Vandree*, 298 A.3d 1114, 1123 (N.J. Super. Ct. App. Div. 2023) (holding that a search is "reasonably contemporaneous" to an arrest if both occur "as parts of a single transaction, as connected units of an integrated incident" (quoting *State v. Lentz*, 229 A.3d 536, 546 (N.J. Super. Ct. App. Div. 2020))). The trial court apparently

considered the arrest "contemporaneous" with the robbery because, in the court's view, the arrest was "a continuation of [Garcia's] flight" from the crime scene. But courts do not interpret "contemporaneous" so broadly. *See, e.g., Rojas*, ¶ 46, 504 P.3d at 308 (distinguishing the facts in *United States v. Roberson*, 581 F. Supp. 3d 65, 73 (D.D.C. 2022), where the communications at issue took place "within minutes" of the offense and thus "occurred contemporaneously" with it, from Rojas's extrinsic action, which took place days after the alleged crime); *People v. Moore*, 902 P.2d 366, 370 (Colo. App. 1994) (affirming the admission of evidence showing that the defendant assaulted someone "approximately [thirty] minutes" before the victim was assaulted and noting that "[c]ontemporaneous does not mean simultaneous"), *aff'd*, 925 P.2d 264 (Colo. 1996); *People v. Bennett*, 129 Cal. Rptr. 679, 685 (Ct. App. 1976) ("[C]ontemporaneous means 'at or near the same time' and is synonymous with 'simultaneous' and 'concurrent.'" (quoting Webster's Third New International Dictionary 491 (2002))); *cf. People v. Gilkey*, 507 P.2d 855, 856-57 (Colo. 1973) (concluding, in a case involving the res gestae doctrine later abolished in *Rojas*,

that a defendant's statement to police made twelve hours after the offense was not contemporaneous with it).

¶ 67 Even if we were to assume that the arrest evidence was "contemporaneous[] with the charged offense," such evidence was not connected to "facilitat[ing] the commission" of the robbery. *Rojas*, ¶ 52, 504 P.3d at 309. As the trial court noted, there was "scant" evidence that Garcia was armed with a deadly weapon during the robbery — only the social media evidence and the fact he possessed a gun when arrested supported the "armed with a deadly weapon" element of aggravated robbery. § 18-4-302(1). Garcia's possession of a gun six days after the robbery could not have furthered a robbery committed six days earlier, *cf. People v. Tweedy*, 126 P.3d 303, 308 (Colo. App. 2005) (explaining that, for purposes of a weapon misconduct charge, a weapon is used to "facilitate crime" when it "further[s] the . . . offense underlying the weapons misconduct charge"), nor did it "complete[] the story or provide[] context to the charged crime," *United States v. Fogg*, 922 F.3d 389, 393 (8th Cir. 2019) (quoting *United States v. Young*, 753 F.3d 757, 767 (8th Cir. 2014)), or "explain[] why" Garcia participated in the robbery, *id.* (quoting *United States v. Williams*,

796 F.3d 951, 961 (8th Cir. 2015)). Moreover, the circumstances of the arrest were dissimilar to the circumstances of the robbery. *See Yusem*, 210 P.3d at 467 (explaining that other acts with a "high degree of similarity" to the defendant's behavior in the charged offense make it "easier for the jury to identify the probative value of the evidence"). We therefore conclude that the arrest evidence was extrinsic.

¶ 68    We next turn to whether the arrest evidence was admissible under *Spoto*.

### c.    The Trial Court Abused Its Discretion by Admitting the Arrest Evidence Under *Spoto*

¶ 69    As noted *supra* Part II.A.4.a, the trial court did not evaluate the admissibility of the arrest evidence under the third and fourth *Spoto* factors. We may, however, conduct a full *Spoto* analysis on appeal. *See People v. Martinez*, 36 P.3d 154, 158-61 (Colo. App. 2001) (conducting a CRE 404(b) analysis for the first time on appeal).

¶ 70    Even assuming that the arrest evidence satisfied the first and second *Spoto* factors, we conclude that it fails under the third and fourth factors for the same reasons we held that the social media

35

evidence was inadmissible. To impute to Garcia gun possession during the robbery because he possessed a gun six days later necessarily rests on the improper inference that Garcia was a reckless and dangerous person who always carried a gun and therefore was more likely to act in conformity with that character on the day of the robbery. Thus, the jury would have needed to draw an improper inference for the arrest evidence to be relevant; the logical relevance of Garcia's later gun possession cannot be separated from the inference that he possessed a bad character.

¶ 71 Furthermore, even if the relevance of the arrest evidence could be separated from any inference of bad character, the risk of unfair prejudice to Garcia was high. That Garcia was armed nearly a week after the robbery added limited probative value in determining whether he was armed with a deadly weapon when he and Vargas-Vigil confronted the victim. But it did paint Garcia as the sort of person who would aid and abet a robbery.

¶ 72 For these reasons, we conclude that the trial court abused its discretion by admitting the arrest evidence.

### 5. The Trial Court's Abuse of Discretion Was Not Harmless

¶ 73    The People argue that any error in admitting the other act evidence was harmless because Garcia's culpability for felony murder did not rest on whether he shot the victim and because the jury was instructed to consider the evidence only for a limited purpose. We are not persuaded.

¶ 74    The prejudicial risk from the improper admission of the other act evidence flowed from its tendency to cast Garcia as a person who was both enamored with and cavalier around guns. That evidence suggested that, because he was armed on the day of the robbery, it was more likely that he knew the interaction would be more than a simple drug purchase. Yet the initial limiting instruction the court gave the jury specifically *permitted* it to consider such evidence when determining whether Garcia was armed on the day of the murder. This was not a limitation but, rather, a grant of permission to consider evidence of Garcia's character and whether he acted in conformity with that character on the day of the robbery. Consequently, the People have not demonstrated that there was no reasonable probability that the

error contributed to Garcia's conviction. *See Pernell*, ¶ 22, 411 P.3d at 673.

¶ 75     Moreover, we have no way of knowing whether the jury convicted Garcia of felony murder because it believed he was armed at the time he and Vargas-Vigil confronted the victim. The jury could have concluded that Garcia used "force, threats, or intimidation" because he wielded a gun during the robbery. § 18-4-302(1)(b)-(c). We know that the jury rejected Garcia's disengagement affirmative defense, an element of which was that Garcia was not armed at the time. *See* § 18-3-103(1.5)(c). Thus, the jury may have disbelieved Garcia's affirmative defense because it accepted the prosecution's argument that Garcia was armed at the time of the robbery. Moreover, although the trial court limited the scope of the other act evidence by instructing the jury to consider it for "the purpose of determining if [Garcia] was armed on the date of the offense only," the court did not also tell the jury it could not consider such evidence when deliberating on felony murder.

¶ 76     Accordingly, we cannot say that the improperly admitted evidence did not taint all of Garcia's convictions, including his

38

felony murder conviction. (As noted above, the trial court merged all Garcia's aggravated robbery convictions into the felony murder conviction.)

¶ 77　For these reasons, we reverse all of Garcia's convictions and remand for a new trial.

### C.　The Theory of Defense Instruction

¶ 78　Garcia contends the trial court erred by rejecting his theory of defense instruction and instead giving an instruction that "implicitly conceded a disputed fact." We address this issue because it is likely to arise on remand. We disagree.

#### 1.　Standard of Review and Substantive Law

¶ 79　We review a trial court's decision "to modify a tendered theory of defense instruction for an abuse of discretion." *People v. Martinez,* 2020 COA 141, ¶ 79, 486 P.3d 412, 426. "In analyzing whether the trial court abused its discretion, we review the instructions as a whole to determine whether the jury was 'adequately informed of the defendant's theory of defense.'" *Id.* at ¶ 80, 486 P.3d at 426 (quoting *People v. Dore,* 997 P.2d 1214, 1222 (Colo. App. 1999)).

¶ 80    A trial court must give an "instruction embodying a defendant's theory of the case" so long as "the record contains any evidence to support the theory." *Id.* at ¶ 81, 486 P.3d at 426 (quoting *People v. Nunez*, 841 P.2d 261, 264 (Colo. 1992)). "A proper theory of the case instruction should explain [the] defendant's view of what the evidence shows, must be general and brief, and must instruct the jury on the legal effect of the explanation." *Id.* at ¶ 81, 486 P.3d at 426-27 (quoting *People v. Meads*, 58 P.3d 1137, 1138 (Colo. App. 2002)). But a trial court may properly refuse to give a theory of defense instruction that is "argumentative, contains errors of law, merely reiterates portions of the evidence, or is encompassed within the other instructions." *Id.* at ¶ 82, 486 P.3d at 427 (quoting *People v. Lee*, 30 P.3d 686, 689 (Colo. App. 2000)).

¶ 81    If the trial court rejects a tendered theory of defense instruction, it "has an affirmative obligation to cooperate with counsel to either correct the tendered theory of the case instruction or to incorporate the substance of such in an instruction drafted by the court." *Id.* (quoting *Nunez*, 841 P.2d at 265).

## 2.   Additional Facts

¶ 82     Garcia's counsel tendered the following theory of defense instruction:

> Garcia asserts he believed he was going to [the victim's] truck with [Vargas-Vigil] to [buy] marijuana.  [Garcia] asserts that, once at the truck, [Vargas-Vigil] acted alone and impetuously to rob and kill [the victim].  [Garcia] did not know that [Vargas-Vigil] intended to rob [the victim].  Because [Garcia] did not know that [Vargas-Vigil] would rob [the victim], he could not aid, abet, advise or encourage [Vargas-Vigil] in the planning or commission of the aggravated robbery.  Further, [Vargas-Vigil] acted alone when he took items from [the victim] and his truck.

¶ 83     The court found that this instruction was improper because it was "argumentative" and "highlight[ed] certain portions of evidence."  The court then drafted a shortened version of the instruction: Garcia "asserts he did not aid, abet, advise or encourage . . . Vargas-Vigil in the planning or commission of the crimes charged.  Further, . . . Vargas-Vigil acted alone when he robbed and killed [the victim]."

¶ 84     Defense counsel objected to the rewritten instruction, asserting that "a simple denial of the elements" of the crimes charged was "not sufficient for a theory of defense" because the

41

prosecution proceeded on "multiple theories that require[d] multiple types of defenses." In addition, defense counsel objected to omitting her proposed language addressing "what was happening as [Garcia and Vargas-Vigil] were going to the truck." The court, however, determined that the "planning or commission" language in the revised instruction took those actions into account. The court said the rewritten instruction "incorporate[ed] the ideas that were presented in the original [instruction] submitted to the [c]ourt" and "just streamline[d]" them.

### 3. The Court Did Not Err by Declining to Give Garcia's Theory of Defense Instruction or by Modifying It

¶ 85    Garcia contends that the trial court abused its discretion by rejecting and modifying his theory of defense instruction because the modified instruction "implicitly conceded" a material fact. Garcia contends that the modified theory of defense instruction "*assumed* Garcia had [advance] knowledge" of the robbery and murder, and asserts that "no part of the court's instruction denied Garcia knew Vargas-Vigil intended to rob the victim." Garcia argues that the court's instruction therefore improperly implied that

42

Garcia "knew but stood by" during the robbery. We are unpersuaded.

¶ 86    Reviewing the jury instructions as a whole, the jury was adequately instructed regarding Garcia's theory of defense. The court's modified instruction did not concede that Garcia possessed advance knowledge of Vargas-Vigil's intentions. And the other jury instructions correctly informed the jury that the prosecution bore the burden of proving every element of the crimes charged, that whether Garcia acted knowingly or intentionally was an element of the crimes, and that the prosecution bore the burden of proving each element of the offenses beyond a reasonable doubt. A defendant's theory of defense instruction is not insufficient merely because it does not negate every element of the crime charged. *See People v. Marquez-Lopez*, 952 P.2d 788, 791 (Colo. App. 1997) (holding there was no reversible error when the court declined to give the defendant's theory of defense instruction, "which, as tendered, recited that [the] defendant did not knowingly" commit the charged crime because "the requirement that the prosecution establish the element of 'knowingly' was covered in other instructions to the jury on elements of the charged crime").

¶ 87     Further, the trial court's modified instruction did not concede any element of the charged crimes.  The instruction was consistent with Garcia's theory of defense — that he did not participate in the "planning or commission" of the charged crimes — because the instruction encompassed whether he had advance knowledge of Vargas-Vigil's intentions.  The court's instruction did not relieve the prosecution from its burden to prove Garcia's mental state for each of the charged crimes beyond a reasonable doubt.  Further, the defense argued in closing that Garcia did not have advance knowledge of Vargas-Vigil's plan.  *See People v. Trujillo*, 2018 COA 12, ¶ 14, 433 P.3d 78, 83 ("In considering whether a jury was adequately informed of a defendant's theory of the case, a reviewing court can take into account whether defense counsel's closing argument 'fairly represented' the theory to the jury." (quoting *Dore*, 997 P.2d at 1222)).

¶ 88     Finally, we reject Garcia's argument that the court's instruction was inadequate in light of the prosecution's decision to "proceed[] on multiple theories" related to whether Garcia was a principal or a complicitor.  To the contrary, the court's instruction "accurately described" Garcia's theory of defense regardless of

44

whether the prosecution argued he was a principal or a complicitor. *People v. Bruno*, 2014 COA 158, ¶ 21, 342 P.3d 587, 592.

¶ 89    Thus, we hold that the trial court did not abuse its discretion by rejecting Garcia's tendered theory of defense instruction as written and instead modifying it.

## III.    Disposition

¶ 90    Garcia's convictions are reversed and the case is remanded for a new trial.

JUDGE WELLING and JUDGE TOW concur.